# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

## Eastern Division

| | |
|---|---|
| CHRISTOPHER J. FIORENTINO, *on behalf of himself and all others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> FLOSPORTS, INC., <br><br> Defendant. | Case Action No. <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Christopher J. Fiorentino, individually and on behalf of all other similarly situated persons ("Plaintiff"), brings this action against FloSports, Inc. ("FloSports" or "Defendant") for its violations of the federal Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA" or "the Act"). Plaintiff's claims arise from Defendant's practice of knowingly disclosing to a third party, Meta Platforms, Inc., formerly known as Facebook, Inc. ("Facebook"), "personally identifiable information" ("PII") about the videos Plaintiff and similarly situated subscribers obtain or request from Defendant's websites and applications (collectively "websites").

## NATURE OF THE CASE

1. This is a consumer privacy class action against FloSports, for knowingly disclosing its digital subscribers' identities and the specific online video materials they obtained or requested from Defendant's website to Facebook, in violation of the VPPA.

2. FloSports is "engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audiovisual materials," thus bringing it within the VPPA's definition of "video tape service provider." 18 U.S.C. § 2710(a)(4). Specifically, FloSports operates a digital subscription service where subscribers may view prerecorded sporting events and shows available on the FloSports online platform.

3. The VPPA prohibits "video tape service providers," such as FloSports, from "knowingly disclos[ing]" consumers' PII, including "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."

4. FloSports violates the VPPA by disclosing the specific videos its subscribers have requested or obtained to Facebook. Defendant discloses this information to Facebook using the "Facebook Pixel" or "Pixel"—a snippet of programming code FloSports chose to

-1-

CLASS ACTION COMPLAINT
CASE NO.

install on its websites that sends information to Facebook. In this case, the information shared with Facebook includes the subscriber's Facebook ID ("FID") coupled with the title of the video that the subscriber watched on the FloSports website.

5. A subscriber's FID is a unique sequence of numbers linked to that individual's Facebook profile. Entering "facebook.com/[FID]" into a web browser returns the Facebook profile of that particular person. Thus, the FID identifies a person more precisely than a name, as numerous persons may share the same name but each person's Facebook profile (and associated FID) is unique.

6. FloSports discloses the subscriber's FID and viewing content to Facebook together in a single transaction. Because the subscriber's FID uniquely identifies an individual's Facebook account, Facebook—or any other person—can use the FID to quickly and easily locate, access, and view a particular subscriber's corresponding Facebook profile. In the simplest terms, the Pixel installed by Defendant captures and discloses to Facebook what video a specific subscriber viewed on the FloSports website.

7. On behalf of himself and all similarly situated FloSports subscribers, Plaintiff seeks an order enjoining FloSports from further unauthorized disclosures of subscribers' PII; awarding liquidated damages in the amount of $2,500 per violation, attorneys' fees, and costs; and granting any other preliminary or equitable relief the Court deems appropriate.

**PARTIES**

8. Plaintiff Christopher J. Fiorentino is a citizen and resident of the State of Massachusetts.

9. In the two years before this action was filed, Plaintiff used his Internet-connected devices and web-browsing software ("browser") installed on those devices to visit and access video content on Defendant's website.

-2-

10. Defendant FloSports is a Delaware Corporation with its headquarters in Texas at 301 Congress Ave. Suite 1500, Austin, TX 78701.

## JURISDICTION AND VENUE

11. This Court has personal jurisdiction over FloSports because Defendant conducts business in this state, markets to citizens of Massachusetts, has a subscriber base in Massachusetts including Plaintiff, and the action that is the subject of the litigation occurred in Massachusetts. Therefore, Defendant purposefully avails itself to the benefits and protections of the forum hailing Defendant into court in this forum does not offend traditional notions of fair play and substantial justice.

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

13. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 because the cause of action accrued in this District and Division.

## COMMON FACTUAL ALLEGATIONS

### I. Background of the VPPA

14. With certain exceptions that are inapplicable here, the VPPA prohibits "a video tape service provider," from "knowingly disclos[ing], to any person, personally identifiable information concerning any consumer of such provider[.]" 18 U.S.C. § 2710(b)(1).

15. The VPPA was passed in 1988 for the explicit purpose of protecting the privacy of individuals' and their families' video rental, purchase, and viewing data. Leading up to its enactment, members of the United States Senate warned that "[e]very day Americans are forced to provide to businesses and others personal information without having any control over where that information goes." S. Rep. No. 100-599 at 7-8 (1988).

16.     While these statements were true in 1988 when the VPPA was passed, the importance of legislation like the VPPA in the modern era of datamining is more pronounced than ever before. During a recent Senate Judiciary Committee meeting, "The Video Privacy Protection Act: Protecting Viewer Privacy in the 21st Century," Senator Patrick Leahy emphasized that point by stating: "While it is true that technology has changed over the years, we must stay faithful to our fundamental right to privacy and freedom. Today, social networking, video streaming, the 'cloud,' mobile apps and other new technologies have revolutionized the availability of Americans' information."[1]

17.     In this case, Defendant chose to deprive Plaintiff and Class members of that right by systematically disclosing their PII to Facebook without their informed, written consent.

## II.     FloSports Designed its Website to Disclose Users' PII, Including Video Viewing Activity, to Facebook.

18.     FloSports operates a website in the U.S., accessible from a desktop and mobile device at https://www.FloSports.tv.

19.     In programing its website, FloSports installed the Facebook Pixel, thus making the knowing choice to track subscribers' PII and send it to Facebook.

20.     FloSports allows consumers to become digital subscribers to its streaming-video platform and content through its website. To subscribe, the consumer must provide his or her name, email address, billing address, and credit- or debit-card information.

---

[1] The Video Privacy Protection Act: Protecting Viewer Privacy in the 21st Century, Senate Judiciary Committee Subcommittee on Privacy, Technology and the Law, https://www.judiciary.senate.gov/meetings/the-video-privacy-protection-act-protecting-viewer-privacy-in-the-21st-century.

-4-

CLASS ACTION COMPLAINT
CASE NO.

21. After completing the subscription process and gaining access to Defendant's videos, FloSports discloses to Facebook, through the Facebook Pixel, the FID of the subscriber and the specific video the subscriber viewed.

### III. How FloSports Discloses Digital Subscribers' PII.

22. Businesses have the option of installing the Facebook Pixel on their websites. Doing so enables the business to collect information about how users interact with the business's website, such as whether they initiate purchases on the website, what items they look at, and, relevant here, the content the users view on a particular webpage.

23. The Facebook Pixel is a unique string of code businesses can embed on their websites allowing them to track consumers' actions and report the actions back to Facebook.

24. The Pixel can follow a consumer to different websites and across the Internet even after clearing of browser history.

25. The Pixel allows Facebook to build detailed profiles about a website's users as those users browse the web so that targeted advertisements can be served upon the users.[2]

26. To take advantage of advertising and information services offered by Facebook, Defendant programmed the FloSports website to include a Facebook Pixel.

27. When a FloSports subscriber watches videos on Defendant's website, the Pixel installed by Defendant on its own website[3] sends to Facebook certain information about the viewer and what the viewer watched. Specifically, FloSports sends to Facebook the video content name, its URL, and the subscriber's FID.

---

[2] THE MARKUP, *How We Built a Meta Pixel Inspector*. https://themarkup.org/show-your-work/2022/04/28/how-we-built-a-meta-pixel-inspector (last visited June 22, 2022).
[3] *See* https://www.facebook.com/business/help/952192354843755?id=1205376682832142 (last visited June 22, 2022).

-5-

CLASS ACTION COMPLAINT
CASE NO.

28. An FID is a unique and persistent identifier that Facebook assigns to each of its users. With it, anyone can look up the user's unique Facebook profile. Simply put, with only an FID and the video content name and URL—all which Defendant knowingly provides to Facebook—any ordinary person could learn the identity of the digital subscriber and the specific video or media content he requested on the FloSports website.

29. Defendant could easily program its website so that this information is not disclosed to Facebook.

30. At all relevant times, Defendant knew that the Facebook Pixel disclosed PII to Facebook. This is evidenced from, among other things, the functionality of the Pixel, including that the Pixel's sharing of information with Facebook enabled Defendant's website to show targeted advertising to its digital subscribers based on the content those digital subscribers had viewed on the website, including videos.

31. As relevant here, FloSports disclosed to Facebook the video title and FID in a single transmission, through the Facebook Pixel as depicted below[4]:

---

[4] For the purposes of demonstrating in this Complaint FloSports' practice of sharing consumers personally identifying information, an exemplary account for "Gray Nelson" was created and utilized.



*Figure 1*

32. In this example, Gray Nelson is watching Defendant's video entitled "All-Access: Texas A&M."

33. The FID is displayed in the "c_user" code. In this example the code is 100085383292283:

*Figure 3*

34. In this example, the disclosure of the FID is coupled with the title of the video the subscriber watched along with the URL for the video:

-7-

CLASS ACTION COMPLAINT
CASE NO.



*Figure 4*

35. Any person can specifically identify the user viewing the "All-Access: Texas A&M" video by simply entering "facebook.com/100085383292283" into their search bar:



*Figure 5*

36. Upon pressing enter or search, the following page automatically appears:



*Figure 6*

-8-
CLASS ACTION COMPLAINT
CASE NO.

37. FloSports violates the VPPA by knowingly disclosing subscribers' FIDs, together with their viewing content, to Facebook.

## PLAINTIFF-SPECIFIC ALLEGATIONS

38. Plaintiff Christopher J. Fiorentino is a FloSports subscriber and is a Facebook user. He subscribed to FloSports beginning in 2021.

39. Mr. Fiorentino consistently paid FloSports a subscription during his subscription period.

40. Mr. Fiorentino had a Facebook account during the time he was a FloSports subscriber.

41. Mr. Fiorentino requested or obtained video content through his FloSports subscription, including but not limited to while logged into his Facebook account, in the two years preceding the filing of this action.

42. FloSports disclosed to Facebook Mr. Fiorentino's FID coupled with the title of the videos he requested or obtained and the URLs to access those videos.

43. Each time Defendant disclosed his PII to Facebook, it violated his rights under the VPPA.

## CLASS ALLEGATIONS

44. Plaintiff brings this lawsuit under Rules 23(a) and (b) of the Federal Rules of Civil Procedure on his own behalf and on behalf of the following Class:

> All persons in the United States who subscribed to FloSports, requested or obtained video content on a website or application operated by FloSports, and used Facebook during the time Facebook's Pixel was active on FloSports.

45. The "Class Period" is from September 13, 2020, to the present.

46. Excluded from the Class is Defendant, any controlled person of Defendant, as well as the officers and directors of Defendant and the immediate family members of any such

person. Also excluded is any judge who may preside over this cause of action and the immediate family members of any such person. Plaintiff reserves the right to modify, change, or expand the Class definition based upon discovery and further investigation.

47.     **Numerosity**: The Class consists of at least hundreds of individuals, making joinder impractical.

48.     **Commonality and Predominance**: Common questions of law and fact exist with regard to the claim and predominate over questions affecting only individual Class members. Questions common to the Class include:

    A.  Whether FloSports knowingly disclosed Plaintiff's and Class members' PII to Facebook;

    B.  Whether FloSports' conduct violates the Video Privacy Protection Act, 18 U.S.C. § 2710; and

    C.  Whether FloSports should be enjoined from disclosing Plaintiff's and Class members' PII.

49.     **Typicality:** Plaintiff's claims are typical of the claims of the Class members in that Plaintiff, like all Class members, has been injured by FloSports' misconduct—disclosing consumers' PII to Facebook.

50.     **Adequacy of Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, including privacy-protection cases. Plaintiff does not have any interests antagonistic to those of the Class.

51.     **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce FloSports to comply with federal law. Moreover, because the amount of each individual Class

member's claim is small relative to the complexity of the litigation, and because of FloSports' financial resources, Class members are unlikely to pursue legal redress individually for the violations detailed in this complaint. A class action will allow these claims to be heard where they would otherwise go unheard because of the expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

## CAUSE OF ACTION
### Violation of the Video Privacy Protection Act
### 18 U.S.C. § 2710

52. Plaintiff incorporates and realleges the above factual allegations by reference.

53. The VPPA prohibits a "video tape service provider" from knowingly disclosing "personally identifiable information" concerning any "consumer" to a third-party without the "informed, written consent (including through an electronic means using the Internet) of the consumer." 18 U.S.C. § 2710.

54. As defined in 18 U.S.C. § 2710(a)(4), a "video tape service provider" is "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audiovisual materials[.]" FloSports is a "video tape service provider" as defined in 18 U.S.C. § 2710(a)(4) because it is engaged in the business of delivering audiovisual materials that are similar to prerecorded video cassette tapes and those sales affect interstate or foreign commerce.

55. As defined in 18 U.S.C. § 2710(a)(1), a "'consumer' means any renter, purchaser, or subscriber of goods or services from a video tape service provider." As alleged above, Plaintiff and Class members are subscribers to Defendant's service of providing video content. Thus, Plaintiff and Class members are "consumers" under this definition.

-11-

CLASS ACTION COMPLAINT
CASE NO.

56. As defined in 18 U.S.C. § 2710(a)(3), "'personally identifiable information' includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."

57. FloSports knowingly disclosed Plaintiff's and Class members' PII—specifically, their FIDs and the title and URL of the videos they requested or obtained—to Facebook.

58. This information constitutes personally identifiable information under 18 U.S.C. § 2710(a)(3) because it identified Plaintiff and each Class member to Facebook as an individual who requested or obtained Defendant's video content, including the specific video materials watched on Defendant's website. Indeed, anyone with an FID could identify the individual associated with it simply by entering "facebook.com/[FID]" into a web browser.

59. Defendant never obtained from Plaintiff, or any Class member informed, written consent. More specifically, Defendant never obtained from Plaintiff or any Class member informed, written consent in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer; Defendant never obtained from Plaintiff or any Class member informed, written consent that, at the election of the consumer, was given at the time the disclosure is sought or was given in advance for a set period of time, not to exceed two years or until consent is withdrawn by the consumer, whichever is sooner; and Defendant never provided an opportunity, in a clear and conspicuous manner, for Plaintiff or any Class member to withdraw consent on a case-by-case basis or to withdraw consent from ongoing disclosures, at the consumer's election. *See* 18 U.S.C. § 2710(b)(2).

60. Defendant's disclosures were made knowingly, as it programmed the Facebook Pixel into its website code, knowing that Facebook would receive video titles and the subscriber's FID when a subscriber watched a video.

CLASS ACTION COMPLAINT
CASE NO.

61. By disclosing Plaintiff's and Class members' PII, FloSports violated Plaintiff's and Class members' statutorily protected right to privacy in their video-watching habits. 18 U.S.C. § 2710(c).

62. As a result of these violations, FloSports is liable to Plaintiff and Class members.

63. On behalf of himself and all members of the Class, Plaintiff seeks to enjoin Defendant's disclosures of PII; liquidated damages in the amount of $2,500 per violation; reasonable attorneys' fees and costs; and all other preliminary or equitable relief the Court deems appropriate. 18 U.S.C. § 2710(c)(2)(A).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court:

i. Certify this case as a class action, and appoint Plaintiff as Class Representative and the undersigned attorneys as Class Counsel;

ii. Enter judgment in favor of Plaintiff and the Class;

iii. Enjoin Defendant's future disclosures of Plaintiff's and Class members' PII;

iv. Award Plaintiff and Class members liquidated damages they are entitled to under the VPPA;

v. Award Plaintiff and Class members pre- and post-judgment interest as provided by law;

vi. Award Plaintiff and Class members reasonable litigation expenses and attorneys' fees as permitted by law; and

  vii.  Award such other and further relief as the Court deems necessary and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues triable as of right.

Dated: September 13, 2022

        Respectfully submitted,

        /s/ C. Andrew Dirksen
        C. Andrew Dirksen (BBO #568773)
        **CERA LLP**
        800 Boylston Street, 16th Floor
        Boston, MA 02199
        Tel. (857) 453-6555
        cdirksen@cerallp.com

        -and-

        Joseph Henry (Hank) Bates, III (*pro hac vice* forthcoming)
        Lee Lowther (*pro hac vice* forthcoming)
        Courtney E. Ross (*pro hac vice* forthcoming)
        **CARNEY BATES & PULLIAM, PLLC**
        519 W. 7th Street
        Little Rock, AR 72201
        Tel. (501) 312-8500
        hbates@cbplaw.com
        llowther@cbplaw.com
        cross@cbplaw.com

        *Attorneys for Plaintiff*

CLASS ACTION COMPLAINT
CASE NO.