**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

CHRISTOPHER J. FIORENTINO,

                Plaintiff,

      v.

FLOSPORTS, INC.,

                Defendant.

Case No. 1:22-CV-11502-AK

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**<u>TABLE OF CONTENTS</u>**

**Page**

I.    INTRODUCTION ............................................................................................... 1

II.   BACKGROUND ................................................................................................ 2

    A.   Summary of Allegations ......................................................................... 2

    B.   Procedural History .................................................................................. 3

    C.   Mediation and Settlement ...................................................................... 3

III.  THE SETTLEMENT'S TERMS ...................................................................... 4

    A.   Class Definition ...................................................................................... 4

    B.   Monetary Relief ...................................................................................... 4

    C.   Business Practice Changes ..................................................................... 5

    D.   Release .................................................................................................... 5

IV.  ARGUMENT ..................................................................................................... 5

    A.   The Court Will Be Able to Certify the Proposed Settlement Class. ...................... 6

        1.    The requirements of Rule 23(a) are satisfied. ............................................. 7

        2.    The requirements of Rule 23(b)(3) are satisfied. ..................................... 10

    B.   The Proposed Settlement Is Fundamentally Fair, Reasonable, and Adequate. ................................................................................................ 12

        1.    The Settlement Class has been vigorously represented ........................... 12

        2.    The Settlement was negotiated at arm's length after the exchange of informal discovery. ............................................................................. 13

        3.    The Settlement provides meaningful relief to the class. .......................... 14

        4.    The Settlement treats Class Members equitably. ...................................... 18

        5.    Plaintiff's counsel are highly experienced in similar litigation and their opinion regarding the Settlement is entitled to considerable weight. .......................................................................................................... 18

    C.   The Proposed Notice Plan Should Be Approved. ................................. 19

V.   PROPOSED SCHEDULE FOR NOTICE AND FINAL APPROVAL ........................ 20

VI.  CONCLUSION ................................................................................................ 20

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Ambrose v. Boston Globe Media Partners, LLC*,
No. 1:22-cv-10195-RGS (D. Mass. May 25, 2023) .................................................. 15

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ............................................................................................ 6, 10

*Andrews v. Bechtel Power Corp.*,
780 F.2d 124 (1st Cir. 1985) ...................................................................................... 9

*Bertella v. JetDirect Aviation, Inc.*,
No. 09-cv-10527, 2010 WL 4103664 (D. Mass. Oct. 19, 2010) ......................... 9, 10

*Bezdek v. Vibram USA Inc.*,
79 F. Supp. 3d 324 (D. Mass. 2015) ................................................................. passim

*Bussie v. Allmerica Fin. Corp.*,
50 F. Supp. 2d 59 (D. Mass. 1999) ..................................................................... 9, 19

*Cohen v. Brown Univ.*,
16 F.4th 935 (1st Cir. 2021) ............................................................................... 6, 12

*Del Sesto v. Prospect Chartercare, LLC*,
No. 18-cv-00328, 2019 WL 2162083 (D.R.I. May 17, 2019) ................................... 6

*DeRosa v. Mass. Bay Commuter Rail Co.*,
694 F. Supp. 2d 87 (D. Mass. 2010) ......................................................................... 7

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) ................................................................................................. 19

*Gintis v. Bouchard Transp. Co.*,
596 F.3d 64 (1st Cir. 2010) ..................................................................................... 11

*In re Credit Suisse-AOL Sec. Litig.*,
253 F.R.D. 17 (D. Mass. 2008) ................................................................................. 8

*In re Facebook, Inc. Consumer Privacy User Profile Litig.*,
18-md-02843 (N.D. Cal. July 11, 2023) ................................................................. 15

*In re Lupron Mktg. & Sales Prac. Litig.*,
228 F.R.D. 75 (D. Mass. 2005) .......................................................................... 6, 12

*In re M3 Power Razor Sys. Mktg. & Sales Prac. Litig.*,
270 F.R.D. 45 (D. Mass. 2010) ......................................................................... 7, 11

*In re Neurontin Mktg. & Sales Pracs. Litig.*,
58 F. Supp. 3d 167 (D. Mass. 2014) ....................................................................... 17

## TABLE OF AUTHORITIES
### (continued)

**Page**

*In re Organogenesis Sec. Litig.*,
   241 F.R.D. 397 (D. Mass. 2007) ................................................................. 10

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   588 F.3d 24 (1st Cir. 2009) ................................................................. 5, 13

*Kinder v. Meredith Corp.*,
   No. 14-cv-11284, 2016 WL 454441 (E.D. Mich. Feb. 5, 2016) ................................. 8

*Lazar v. Pierce*,
   757 F.2d 435 (1st Cir. 1985) ................................................................. 5

*Mazola v. May Dep't Stores Co.*,
   No. 97-cv-10872, 1999 WL 1261312 (D. Mass. Jan. 27, 1999) ............................... 18

*Meaden v. HarborOne Bank*,
   No. 23-cv-10467, 2023 WL 3529762 (D. Mass. May 18, 2023) ..................... passim

*Nat'l Ass'n of Deaf v. Mass. Inst. of Tech.*,
   No. 15-cv-30024, 2020 WL 1495903 (D. Mass. Mar. 27, 2020) .............................. 13

*Ouadani v. Dynamex Operations E., LLC*,
   405 F. Supp. 3d 149 (D. Mass. 2019) ........................................................ 8

*Roberts v. TJX Cos., Inc.*,
   No. 13-cv-13142, 2016 WL 8677312 (D. Mass. Sept. 30, 2016) ..................... 13, 14, 16

*Robinson v. Nat'l Student Clearinghouse*,
   14 F.4th 56 (1st Cir. 2021) ................................................................. 12

*Rolland v. Cellucci*,
   191 F.R.D. 3 (D. Mass. 2000) ............................................................... 18

*Smilow v. Sw. Bell Mobile Sys., Inc.*,
   323 F.3d 32 (1st Cir. 2003) ................................................................. 11

*Wright v. S. New Hampshire Univ.*,
   565 F. Supp. 3d 193 (D.N.H. 2021) ......................................................... 13

**Rules**

Fed. R. Civ. P. 23(a) ...................................................................... 7, 8, 9

Fed. R. Civ. P. 23(b) ...................................................................... 10, 11

Fed. R. Civ. P. 23(c) ...................................................................... 19

Fed. R. Civ. P. 23(e) ...................................................................... passim

**Treatises**

7AA Wright & Miller, Fed. Prac. & Proc. Civ. § 1778 (3d ed. 2023) ......................... 10

## TABLE OF AUTHORITIES
### (continued)

Page

**Other Authorities**

Fed. Trade Comm'n, *Consumers & Class Actions:  A Retrospective & Analysis of Settlement Campaigns* 11 (Sept. 2019), *available at* https://www.ftc.gov/system/files/documents/reports/consumers-class-actions-retrospective-analysis-settlement-campaigns/class_action_fairness_report_0.pdf (last accessed July 24, 2023) .......................... 15

Pew Research Center, *Social Media & News Fact Sheet* (Sept. 20, 2022), https://www.pewresearch.org/journalism/fact-sheet/social-media-and-news-fact-sheet/ (last accessed July 24, 2023) ................................................................................................. 15

## I.      INTRODUCTION

Plaintiff Christopher J. Fiorentino ("Plaintiff"), on behalf of himself and others similarly situated, respectfully asks the Court to approve a proposed Class Action Settlement Agreement (the "Settlement") with Defendant FloSports, Inc. ("FloSports").[1]  The Settlement will fully resolve this litigation, wherein Plaintiff alleges FloSports violated the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), by installing and running the Facebook Pixel on its website, thereby disclosing consumers' personally identifiable information, which the VPPA defines as including information that identifies a person as having requested or obtained specific video materials or services from a video tape service provider..  Under the proposed Settlement, FloSports will create a $2.625 million non-reversionary cash fund for the benefit of the Settlement Class.  FloSports also will agree to suspend operation of the Facebook Pixel on portions of its website relevant to VPPA compliance—*i.e.*, webpages that both include video content and have a URL that identifies the video content viewed.

The Settlement presented for the Court's consideration is fair, reasonable, and adequate. After deduction of Court-awarded fees, expenses, service award, and administrative costs, Settlement Class Members who submit valid claims through a very simple claims process will each receive a *pro rata* share of the Net Settlement Fund.  Plaintiff and his counsel have vigorously prosecuted this action on behalf of the Settlement Class and—through extensive, arm's-length negotiations overseen by experienced mediator Hon. Wayne R. Andersen (Ret.)— have developed an understanding of the strengths and weaknesses of the action. Notwithstanding his confidence in the merits of his VPPA claim, Plaintiff recognizes the challenges and risks inherent in proceeding through litigation and proving his claims at trial.  The challenges and risks include certification of any class, FloSports' various defenses to liability,

---

[1] The Settlement is filed concurrently herewith.  Unless otherwise indicated, capitalized terms herein refer to and have the same meaning as in the Settlement.

including those arising under the statutory text and Plaintiff's consent to Facebook's terms of use and service, as well as defenses to any recovery of damages, and other affirmative defenses.

For the reasons set forth herein, Plaintiff respectfully request the Court:  (1) find it will likely (a) approve the Settlement and (b) certify the Settlement Class for purposes of judgment on the proposed Settlement; (2) appoint Plaintiff as Class Representative for the Settlement Class; (3) appoint Lieff Cabraser Heimann & Bernstein, LLP, Carney Bates & Pulliam PLLC, Burns Charest LLP, and Herrera Kennedy LLP as Class Counsel; (4) direct notice to the Settlement Class and approve the form and manner thereof; (5) authorize retention of Epiq Class Action and Claims Solutions, Inc. ("Epiq") as Settlement Administrator; and (6) set a schedule for final approval of the Settlement and Plaintiff's request for attorneys' fees and expenses.

## II.   BACKGROUND

### A.   Summary of Allegations[2]

Plaintiff alleges that FloSports, a subscription-based digital video streaming service, intentionally installed the Facebook Pixel ("Pixel") on its website and selected the specific categories of information the Pixel would capture and transmit.  Doc No. 46 ("Complaint" or "Compl.") ¶¶ 2, 4–6, 24–28, 60.  Developed by Meta Platforms, Inc. ("Meta"), the Pixel is a string of programming code that businesses like FloSports embed on their websites to track consumers' actions and report those actions back to Meta for targeting and delivering advertisements.  *Id.* ¶¶ 23, 25–26.  FloSports' use of the Pixel allows Meta to build detailed profiles about FloSports subscribers and facilitates FloSports' use of Meta's advertising services. *Id.* ¶¶ 25–27.

FloSports knowingly configured the Pixel to share its subscribers' personally identifiable information ("PII").  *Id.* ¶¶ 20, 27–31.  When a FloSports subscriber views a particular video on its website, FloSports sends the title and URL of that video to Meta via the Pixel.  *Id.* ¶¶ 28, 31–35.  At the same time, FloSports sends the Facebook ID (or "FID") of any subscriber who also

---

[2] FloSports denies, and continues to deny, many of these allegations.

has a Facebook account, using the "c_user" cookie, to Meta via the Pixel.  *Id.*  A Facebook ID is a unique sequence of numbers assigned by Facebook to each user that anyone can use to determine their identity.  *Id.* ¶ 29.  Any ordinary person can quickly and easily type "facebook.com/[FID]" into a web browser to view that subscriber's Facebook profile and all the personal information it contains.  *Id.* ¶¶ 29, 36–37.

Plaintiff was a FloSports subscriber and Facebook user, to whom Meta assigned a unique Facebook ID linked to his Facebook profile, during the relevant period.  *Id.* ¶¶ 39, 41.  After paying FloSports' subscription fees, Plaintiff accessed videos on its website.  *Id.* ¶¶ 40, 42.  Whenever he did so, FloSports sent to Meta, without his consent and via the Pixel, the title and URL of the video he accessed and his Facebook ID.  *Id.* ¶ 43.

### B.   Procedural History

Plaintiff filed this case on behalf of himself and similarly situated FloSports subscribers on September 13, 2022, alleging one claim for violation of the VPPA.  Doc No. 1.  After FloSports moved to dismiss the original complaint (Doc No. 37), Plaintiff filed an amended complaint on November 23, 2022.  Doc No. 46.  The parties jointly filed a motion to stay the case pending completion of formal mediation, which the district court granted on January 18, 2023.  Doc No. 52.

### C.   Mediation and Settlement

Soon after the case was stayed, the parties began mediation before the Honorable Wayne R. Andersen (Ret.).  At Judge Andersen's request, the parties exchanged pre-mediation statements outlining their respective legal positions regarding the merits of Plaintiff's claims and the scope of damages.  *See* Joint Declaration of Rachel Geman and Hank Bates ("Joint Decl.") ¶ 11.  On April 24, 2023, the parties participated in a day-long mediation before Judge Anderson. During that mediation, the parties shared additional information, including with respect to the merits of Plaintiff's claims and the size and nature of the class.  *Id.* ¶ 12.  Although the parties were unable to reach an agreement that day, they continued their negotiations through Judge Andersen in the weeks that followed.  *Id.* ¶ 14.  Those negotiations culminated in a mediator's

proposal on May 9, 2023, which both parties accepted on May 11, 2023.  *Id.*  On May 26, 2023, the parties agreed to and executed a term sheet and proceeded to negotiate and draft a long form settlement agreement.  *Id.* ¶ 15.  On July 21, 2023, the parties finalized and executed the Settlement now before the Court.  *Id.* ¶ 16.

## III.   THE SETTLEMENT'S TERMS

### A.   Class Definition

The parties seek certification, solely for purposes of judgment on the proposed Settlement, of a Settlement Class comprised of:

> all individuals residing in the United States who are or have been Facebook users that subscribed or otherwise signed up for access to FloSports' services, and requested or obtained any prerecorded (including on-demand replay) videos available on any FloSports website, during the Class Period [September 13, 2020, to and through the date of Preliminary Approval].

Settlement ¶ 1.32.[3]  The Settlement Class specifically excludes:  (1) any judge presiding over this Action and members of their families; (2) FloSports, its subsidiaries, parent companies, successors, predecessors, and any entity in which the FloSports or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the Class; and (4) the legal representatives, successors, or assigns of any such excluded persons.  *Id.*

### B.   Monetary Relief

FloSports has agreed to pay $2,625,000 to create a non-reversionary Settlement Fund for the benefit of Class Members.  Settlement ¶¶ 1.31 & 2.1.1.  Class Members who submit valid claims will receive a claims-made *pro rata* payment after the deduction of settlement-related costs, including the expenses of the settlement administrator and the costs of notice to the Class, and any Court-awarded attorneys' fees, expense reimbursements, and named plaintiff service award.  *Id.* ¶¶ 1.17, 2.1.2–2.1.3.

---

[3] The Settlement Class is substantively identical to the class alleged in Plaintiff's Amended Class Action Complaint.  *Compare* Settlement ¶ 1.32, *with* Doc No. 46 (Am. Compl.) ¶ 45. The Settlement Class is also referred to herein as the "Class," and members thereof are referred to as "Settlement Class Members" or "Class Members."

### C.      <u>Business Practice Changes</u>

FloSports also has agreed to implement meaningful business practice changes designed to remediate the alleged VPPA violations going forward.  Within 45 days of preliminary approval of the Settlement, FloSports will suspend operation of the Pixel on any pages of its website that both include video content and have a URL that identifies the video content viewed, unless and until the VPPA is:  (a) amended to expressly permit (and not prohibit) the Released Claims, (b) repealed, or (c) invalidated by a judicial decision on the use of website pixel technology by the United States Supreme Court or the First Circuit Court of Appeals.  *Id.* ¶ 2.2.  This provision does not prevent FloSports from obtaining VPPA-compliant consent in the future should it wish to reinstitute use of the Pixel.  *Id.*

### D.      <u>Release</u>

In exchange for the relief described above, Plaintiff and the Class shall release all claims that have or could have been asserted against FloSports, relating to the facts, transactions, or events alleged in this action.  *See id.* ¶ 1.25 (Released Claims), ¶ 1.26 (Released Parties), ¶¶ 3.1–3.2 (Release).

## IV.     <u>ARGUMENT</u>

The First Circuit maintains a strong policy favoring settlements, especially in class action cases.  *See In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 36 (1st Cir. 2009); *Lazar v. Pierce*, 757 F.2d 435, 440 (1st Cir. 1985) (Torruella, J., concurring) (noting the "overriding public interest in favor of the voluntary settlement of disputes, particularly where class actions are involved").

A proposed class action settlement must be approved by a district court pursuant to the two-stage process set forth in Federal Rule of Civil Procedure 23(e).  At the preliminary approval stage, the court must determine whether it "will likely be able to" certify the class for purposes of judgment on the proposed settlement, and finally approve the proposed settlement as "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e).  The court's role is to assess whether "the settlement appears to fall within the range of possible final approval."  *Del Sesto v. Prospect*

*Chartercare, LLC*, No. 18-cv-00328, 2019 WL 2162083, at *1 (D.R.I. May 17, 2019) (citations and quotations omitted).  Then, after the class is given notice and an opportunity to object to the proposed settlement, the court holds a hearing to consider whether to grant final approval of the settlement and certify the Settlement Class.  *See* Fed. R. Civ. P. 23(e)(2), (4), (5).  "[T]he ultimate decision by the [district court] involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement."  *Cohen v. Brown Univ.*, 16 F.4th 935, 944 (1st Cir. 2021) (quotations omitted).

 As outlined below, preliminary approval of the Settlement is warranted.  ***First***, the Court will likely be able to certify the Settlement Class at the final approval stage pursuant to Rules 23(a) and (b)(3).[4]  ***Second***, the Court will likely be able to finally approve the proposed Settlement—calling for substantial monetary relief and business practice changes—as fundamentally fair, reasonable, and adequate.  ***Third***, the proposed Notice Plan satisfies the requirements of Rule 23(c)(2).  Accordingly, the Court should grant Plaintiff's motion for preliminary approval of the class action settlement and direct notice to the Class.

### A. The Court Will Be Able to Certify the Proposed Settlement Class.

 Rule 23(e)(1) provides that preliminary approval should be granted (and notice disseminated) where the Court "will likely be able to" certify the class for purposes of judgment on the proposed settlement.  Fed. R. Civ. P. 23(e); *see also id.* 2018 Amendment Advisory Committee Notes.  "When a settlement class is proposed, it is incumbent on the district court to give heightened scrutiny to the requirements of Rule 23 in order to protect absent class members."  *In re Lupron Mktg. & Sales Prac. Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005).  "In the settlement context, however, there is an important refinement to [class certification] analysis: the court 'need not inquire whether the case, if tried, would present intractable management problems.'"  *Id.* (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).

---

[4] FloSports continues to deny that class certification would be appropriate in the litigation context, but is nevertheless appropriate in the context of this settlement.

Class certification is a two-step process: *first*, Plaintiff must establish numerosity, commonality, typicality, and adequacy under Rule 23(a); *second*, Plaintiff must establish that one of the bases for certification in Rule 23(b) is met.  Plaintiff contends, and FloSports does not dispute for settlement purposes only, that the proposed Settlement Class meets the requirements for class certification under Rules 23(a) and (b)(3).

### 1.      The requirements of Rule 23(a) are satisfied.

#### a.      Numerosity is satisfied.

The numerosity requirement is satisfied when the class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "The threshold for establishing numerosity is low, and '[c]lasses of 40 or more have been found to be sufficiently numerous.'"  *Meaden v. HarborOne Bank*, No. 23-cv-10467, 2023 WL 3529762, at *2 (D. Mass. May 18, 2023) (Kelley, J.) (quoting *DeRosa v. Mass. Bay Commuter Rail Co.*, 694 F. Supp. 2d 87, 98 (D. Mass. 2010)).  Here, the number of Class Members is in the hundreds of thousands and easily satisfies the numerosity requirement.  Joint Decl. ¶ 12.

#### b.      Commonality is satisfied.

Rule 23(a)(2) requires that there be one or more "questions of law or fact common to the class."  "The threshold for commonality under Rule 23(a)(2) is not high."  *In re M3 Power Razor Sys. Mktg. & Sales Prac. Litig.*, 270 F.R.D. 45, 54 (D. Mass. 2010).  There must be at least one common issue of fact or law that shapes the class such that the resolution "affect[s] all or a substantial number of the class members."  *Id.*

Here, Plaintiff readily meets this standard, as many significant common questions of law and fact exist, including:

1.      Whether FloSports is a video tape service provider within the meaning of the VPPA;

2.      Whether the information FloSports allegedly disclosed to Meta constitutes PII under the VPPA;

3.      Whether FloSports knowingly disclosed Class Members' PII to Meta;

4.     Whether FloSports gave notice to Class Members regarding the disclosure of such information;

5.     Whether FloSports obtained informed, written consent consistent with the requirements of the VPPA from Class Members before disclosing such information to Meta;

6.     Whether FloSports' conduct violates the VPPA; and

7.     Whether Class Members are entitled to damages, declaratory, and injunctive relief, and other remedies.

All Settlement Class Members' claims will be resolved by answering these common questions. Indeed, the overarching focus for all these inquires is FloSports' common course of conduct, *i.e.*, FloSports' knowing disclosure of Class Members' PII through its use of the Facebook Pixel. *See, e.g.*, *Kinder v. Meredith Corp.*, No. 14-cv-11284, 2016 WL 454441, at *1 (E.D. Mich. Feb. 5, 2016) ("[B]ecause there are common questions of both law and fact, including the course of [defendant's] conduct with customer purchasing information and the applicability of [the Michigan Video Rental Privacy Act] to that conduct, the commonality requirement is satisfied."). Thus, commonality is satisfied.

### c.     <u>Typicality is satisfied.</u>

The typicality requirement is satisfied when the representative party's claims are "typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). "[T]he plaintiff needs only to demonstrate that his or her 'injuries arise from the same events or course of conduct as do the injuries of the class' and that the 'plaintiff's claims and those of the class are based on the same legal theory.'" *Meaden*, 2023 WL 3529762, at *2 (citing *In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. 17, 23 (D. Mass. 2008)). Typicality does not require the claims of the representative plaintiff to be completely identical to those of the class. *Ouadani v. Dynamex Operations E., LLC*, 405 F. Supp. 3d 149, 162 (D. Mass. 2019).

Here, Plaintiff's claims stem from the same course of conduct and pattern of alleged wrongdoing as the claims of Settlement Class Members. When a Class Member requested or obtained specific video materials from FloSports' website, the Pixel transmitted that Class

Member's PII to Meta.  While Class Members may not have requested or obtained the same video materials from FloSports, the transmission of the PII occurred in precisely the same way. Compl. ¶¶ 20, 25–38, 50.  Accordingly, Plaintiff's claims are typical because he was subject to the same conduct as the other Class Members, and he is alleged to have suffered the same injury as a result.  *Meaden*, 2023 WL 3529762, at *2.

### d.      Adequacy of representation is satisfied.

The adequate representation requirement is satisfied when the representative party is able to "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This requires first "that the class representative's interests do not conflict with any potential class member, and [second] that the class counsel can adequately represent the interests of the class." *Meaden*, 2023 WL 3529762, at *3 (citing *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985)); *accord Bertella v. JetDirect Aviation, Inc.*, No. 09-cv-10527, 2010 WL 4103664, at *3 (D. Mass. Oct. 19, 2010).

First, Plaintiff has no interests in conflict with those of the Settlement Class. Specifically, Plaintiff and Settlement Class Members are equally interested in obtaining relief for FloSports' alleged misconduct, and for ensuring that FloSports reforms its business practices. *See Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 339 (D. Mass.) (adequacy requirement met where plaintiff's "interests align with those of the class as a whole, because all seek redress from the same injury"), *aff'd*, 809 F.3d 78 (1st Cir. 2015); *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 71 (D. Mass. 1999) (class representative adequate where, "[l]ike the [c]lass overall, [the plaintiff] fell victim to [the defendant's] alleged scheme and, as such, the representatives and the [c]lass share the same interest in seeking remediation for their injury").  Moreover, throughout the pendency of this action, Plaintiff has adequately and vigorously represented his fellow Class Members.  He has spent significant time assisting his counsel, including by providing pertinent information regarding his FloSports subscription and Facebook account.  Joint Decl. ¶ 19.  These same facts support Plaintiff's appointment as Class Representative for the Settlement Class.

Second, Class Counsel have extensive experience litigating, trying, and settling class

actions, including consumer privacy cases like this one, throughout the country.  Joint Decl. ¶¶ 27–44.  Courts across the country have recognized Class Counsel's experience in complex class litigation and their skilled and effective representation.  *Id.*  Class Counsel had sufficient information at their disposal before agreeing to a mediator's proposal, which allowed Class Counsel to adequately assess the strengths and weaknesses of Plaintiff's case and balance the benefits of settlement against the risks of litigation.  *Id.* ¶¶ 17, 20.  In sum, Class Counsel "is qualified, experienced and able to vigorously conduct the proposed litigation."  *Bertella*, 2010 WL 4103664, at *3 (quoting *In re Organogenesis Sec. Litig.*, 241 F.R.D. 397, 406 (D. Mass. 2007)).

Separately, Rule 23(g) requires the Court to appoint Class Counsel to represent the Settlement Class.  Considering counsel's work in this action, their collective familiarity and experience in handling similar actions, and the resources they have committed to representing the Settlement Class, they should be appointed Class Counsel under Rule 23(g)(3) and confirmed under Rule 23(g)(1).  *See* Joint Decl. ¶¶ 18, 27–44 & Exs. 1 & 2.

### 2.   The requirements of Rule 23(b)(3) are satisfied.

Rule 23(b)(3) requires the Court to find that (1) questions of law or fact common to class members predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  *See* Fed. R. Civ. P. 23(b)(3); *accord Meaden*, 2023 WL 3529762, at *3.

### a.   Common questions of law or fact predominate over individual issues.

Rule 23(b)(3) requires a finding that common issues of law or fact predominate over any issues unique to individual class members.  The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 623; *accord* 7AA Wright & Miller, Fed. Prac. & Proc. Civ. § 1778 (3d ed. 2023) ("When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the

dispute on a representative rather than on an individual basis."). "This standard can be met if the common issues predominate, even if some individual issues arise in the course of litigation." *Meaden*, 2023 WL 3529762, at *3 (citing *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 39 (1st Cir. 2003)).

Here, common questions of the kind noted above predominate because there are few, if any, individualized factual issues, and because the core facts involve FloSports' uniform conduct that allegedly harmed all Class Members. Specifically, Plaintiff alleges that FloSports knowingly utilized the Facebook Pixel to disclose Class Members' PII to Meta, and that this conduct uniformly injured Plaintiff and the other Class Members' legally protected interests under the VPPA. In other words, "[Plaintiff] alleges that all class members are entitled to the same legal remedies premised on [FloSports'] same alleged wrongdoing, and the issues affecting every claimant are substantially the same." *Meaden*, 2023 WL 3529762, at *3. This case thus falls within the "types of cases are uniquely well-suited to class adjudication"—*i.e.*, those based on uniform violations of common statutory rights. *In re M3 Power Razor Sys. Mktg. & Sales Prac. Litig.*, 270 F.R.D. at 56.

**b.**     **Class treatment is a superior method of adjudication.**

Rule 23(b)(3) requires a class action to be "superior to other available methods for fairly and efficiently adjudicating the controversy." Where, as here, "there are thousands of potential class members with small claims resulting from a common issue, a class action is the most feasible mechanism for resolving the dispute." *Meaden*, 2023 WL 3529762, at *3.

Further, there is no realistic alternative to a class action here: individual lawsuits by Class Members would be inefficient, and most members would find the cost of litigating individual claims to be prohibitive. *Cf. Gintis v. Bouchard Transp. Co.*, 596 F.3d 64, 66–67 (1st Cir. 2010) ("Rule 23 has to be read to authorize class actions in some set of cases where seriatim litigation would promise such modest recoveries as to be economically impracticable.").

Accordingly, this Court "will likely be able to" certify the class for purposes of judgment on the proposed Settlement under Rule 23(e).

**B.**     **The Proposed Settlement Is Fundamentally Fair, Reasonable, and Adequate.**

Preliminary approval is appropriate where the Court "will likely be able to" finally

approve the settlement under Rule 23(e)(2).  Fed. R. Civ. P. 23(e); *see also id.* 2018 Amendment

Advisory Committee Notes.  Specifically, Rule 23 requires district courts to consider whether:

(A)     the class representatives and class counsel have adequately represented the class;

(B)     the proposal was negotiated at arm's length;

(C)     the relief provided for the class is adequate, taking into account:

   (i)     the costs, risks, and delay of trial and appeal;

   (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

   (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

   (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)     the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[5]

Here, the proposed Settlement, negotiated by competent and experienced counsel who

vigorously represented the interests of the Settlement Class, satisfies Rule 23(e).

**1.**     **The Settlement Class has been vigorously represented**

Plaintiff's interests are aligned with the interests of the Class Members:  they share

identical objectives of establishing liability and obtaining damages.  *See* Section IV.A.1.d, *supra*.

Plaintiff has cooperated fully with his counsel in representing the proposed Class, staying

---

[5] These factors overlap with (and can be analyzed in tandem with) those developed in case law prior to the 2018 amendment to Rule 23.  *Cf. Cohen*, 16 F.4th at 943 n.5 ("[T]he Advisory Committee noted that the amendment was not intended to 'displace any factor' previously in use.").  Courts in this Circuit still presume, for example, that a settlement is fair, reasonable, and adequate under Rule 23 "if certain procedural guidelines were followed," including:  "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected."  *Meaden*, 2023 WL 3529762, at *3 (quoting *In re Lupron*, 345 F. Supp. 2d at 137); *accord Robinson v. Nat'l Student Clearinghouse*, 14 F.4th 56, 59 (1st Cir. 2021) (where "the parties negotiated at arm's length and conducted sufficient discovery, the district court must presume the settlement is reasonable").

informed about the case, keeping in contact with counsel, and submitting information necessary for formal and informal discovery efforts.  *See* Joint Decl. ¶ 19.

Plaintiff's counsel, by the same token, have vigorously represented the Class and will continue to do so after preliminary and final approval of the Settlement (if approved).  *See generally* Joint Decl. ¶¶ 8–10, 18; Section IV.A.1.d, *supra*.  Plaintiff's counsel have vigorously litigated the case to date, including:  (i) conducting a thorough pre-suit investigation that resulted in the preparation of a detailed complaint; (ii) analyzing the legal arguments raised in FloSports' motion to dismiss and preparing an amended complaint; (iii) gathering Plaintiff's documents and relevant information; (iv) preparing mediation statements; (v) requesting and reviewing relevant informal discovery during mediation; (vi) participating in mediation and extensive subsequent settlement discussions; and (vii) achieving a very favorable Settlement on behalf of the Settlement Class.  Joint Decl. ¶ 18.  Additionally, Class Counsel have no conflicts of interest with the Class.  Accordingly, this factor weighs in favor of preliminary approval.  *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d at 36 n.12 ("The duty of adequate representation requires counsel to represent the class competently and vigorously and without conflicts of interest with the class.").

## 2.     The Settlement was negotiated at arm's length after the exchange of informal discovery.

"A settlement is presumed to be reasonable when it is achieved by arm's length negotiations conducted by experienced counsel."  *Nat'l Ass'n of Deaf v. Mass. Inst. of Tech.*, No. 15-cv-30024, 2020 WL 1495903, at *4 (D. Mass. Mar. 27, 2020) (citation omitted).  The assistance of an experienced, neutral mediator and pre-negotiation exchange of discovery further contributes to a presumption of reasonableness.  *See, e.g.*, *Roberts v. TJX Cos., Inc.*, No. 13-cv-13142, 2016 WL 8677312, at *6 (D. Mass. Sept. 30, 2016) ("[T]he participation of an experienced mediator[] also supports the Court's finding that the Settlement is fair, reasonable, and adequate."); *Wright v. S. New Hampshire Univ.*, 565 F. Supp. 3d 193, 206 (D.N.H. 2021) ("presumption of reasonableness" applied where "counsel for the parties negotiated the

Agreement at arm's length, at times with the assistance of an experienced and neutral mediator, following a thorough investigation and mutual exchange of evidence."); *cf. Meaden*, 2023 WL 3529762, at *4 (indicia of reasonableness included mediation by neutral third party and exchange of transaction data and damages methodologies).

Here, the parties engaged in a private mediation before the Honorable Wayne R. Andersen (Ret.), an experienced mediator, to assist them in reaching the proposed Settlement. They prepared and reviewed detailed mediation statements and other supporting materials before participating in a day-long mediation with Judge Anderson. *Id.* ¶¶ 11–13.  Only after weeks of additional, determined negotiations facilitated by Judge Andersen did the parties reach an agreement in principle via a mediator's proposal. *Id.* ¶ 14.  These efforts were unquestionably at arms-length and non-collusive.  Moreover, the Settlement itself bears no indicia of collusion: attorneys' fees were *not* negotiated separately, there is *no* "clear sailing" provision, and under no circumstances will any amount of the Settlement Fund revert to FloSports.  *Cf., e.g.*, *Bezdek*, 79 F. Supp. 3d at 349, 351 & n.23 (clear sailing provisions subject to "heightened scrutiny").

Further, although formal discovery did not take place, the parties informally exchanged information during the mediation.  That information included direct communications between counsel regarding FloSports' data bearing on the merits of Plaintiff's claims, the size of the class, and FloSports' ability to satisfy an adverse judgment. *Id.* ¶¶ 12–13.  Plaintiff's counsel— attorneys with considerable experience in assessing the strengths and weaknesses of VPPA cases—came away from the mediation well-informed about the strengths and risks of the claims, as well as their value. *Id.* ¶¶ 17, 20.  In sum, "the parties exchanged sufficient information over the course of the mediation process to ensure that both sides were making an informed decision regarding the adequacy of the settlement." *Roberts*, 2016 WL 8677312, at *6 (informal information exchange supported settlement's reasonableness).

### 3. The Settlement provides meaningful relief to the class.

The Court should conclude that the proposed Settlement benefits are sufficiently robust to support notice to the Class.  The $2.625 million Settlement Fund represents a significant

monetary recovery.  Initial data indicates that approximately 639,000 FloSports users accessed prerecorded videos on FloSports' website during the relevant time period.  Joint Decl. ¶ 12. Assuming 70% of those users also had Facebook accounts,[6] and that 5% of eligible Class Members will submit claims,[7] *pro rata* payments from the Net Settlement Fund[8] would amount to approximately $73 to each claimant.  That benefit alone would be substantial—and comparable to what plaintiffs recently have obtained in other VPPA cases.  *See, e.g.*, *Ambrose v. Boston Globe Media Partners, LLC*, No. 1:22-cv-10195-RGS (D. Mass. May 25, 2023), Doc No. 52 (Prelim. Approval Order) (assuming 10%–20% claims rate, estimating $22–$44 payment to each claimant); *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 18-md-02843 (N.D. Cal. July 11, 2023), Doc No. 1145 (Mot. for Final Approval) (preliminary estimate of $35 average payment to claimants for release of numerous claims, including under the VPPA).

 In addition to monetary relief, the Settlement also includes valuable injunctive relief— namely, that FloSports will cease use of the Pixel (or otherwise obtain users' informed, written consent) to prevent further violations of the VPPA and its users' privacy.  This is the same injunctive relief Plaintiff would have sought following trial.  *Bezdek*, 79 F. Supp. 3d at 346–47 ("Injunctive relief has been recognized as a meaningful component of a settlement agreement, particularly where it mimics the injunctive relief that the plaintiffs could achieve following

---

[6] *See, e.g.*, Pew Research Center, *Social Media & News Fact Sheet* (Sept. 20, 2022) (estimating 70% of U.S. adults use Facebook), https://www.pewresearch.org/journalism/fact-sheet/social-media-and-news-fact-sheet/ (last accessed July 24, 2023).

[7] Plaintiff uses a 5% claims rate for illustrative purposes only.  Actual claims rates in class settlements can vary widely depending on factors that are not easily predictable, including media reporting on the settlement, individual class members' reactions to the underlying cause of action, the size of the class, effectiveness of the notice program, the relative ease of submitting a claim, and the nature or amount of potential relief available to claimants.  One analysis of 149 consumer class actions conducted by the Federal Trade Commission concluded that "[a]cross all cases in our sample requiring a claims process, the median calculated claims rate was 9%, and the weighted mean (*i.e.*, cases weighted by the number of notice recipients) was 4%."  *See* Fed. Trade Comm'n, *Consumers & Class Actions:  A Retrospective & Analysis of Settlement Campaigns* 11 (Sept. 2019), *available at* https://www.ftc.gov/system/files/ documents/reports/consumers-class-actions-retrospective-analysis-settlement-campaigns/class_ action_fairness_report_0.pdf (last accessed July 24, 2023).

[8] The Net Settlement Fund is the amount remaining for distribution to the Class after deducting settlement administration expenses, any plaintiff service award ordered by the Court, and any award of attorneys' fees and costs ordered by the Court.  Settlement ¶ 1.17.

trial").  Accordingly, the Settlement represents a very favorable result for Settlement Class
Members, who will benefit from not only monetary relief but also forward-looking business
practice changes.

The relief provided through the proposed Settlement is particularly significant
considering the costs and risks of further litigation, the proposed method of distributing relief to
the Class, the Settlement terms relating to attorneys' fees, and the absence of related agreements.
*See* Fed. R. Civ. P. 23(e)(2)(i)–(iv).

***Risks of further litigation***.  Although Plaintiff is confident in the strength of his claims,
he nevertheless recognizes that this novel litigation is inherently risky.  Claims applying the
VPPA to operation of the Pixel are still relatively untested.  Courts have denied motions to
dismiss in substantially similar cases, but no Pixel-based VPPA case has yet proceeded to
summary judgment, let alone trial.  Further, absent the instant Settlement, Plaintiff would have to
conduct formal discovery, which would involve the lengthy, costly, and uncertain process of
obtaining relevant information from FloSports and pursuing subpoenas against third parties like
Meta.  Assuming Plaintiff survived summary judgment—in which FloSports likely would raise
many of the same arguments proffered in its initial motion to dismiss (*see* Doc No. 37)—Plaintiff
would need to certify and maintain a class over FloSports' opposition.  Plaintiff then would need
to prevail at trial and secure an affirmance on appeal before recovering damages.  Ultimately,
continued litigation could add several more years before there is a resolution.

A further risk factor is FloSports' ability to satisfy a larger judgment.  *See, e.g.*, *Bezdek*,
79 F. Supp. 3d at 344 ("ability of the defendants to withstand a greater judgment" is factor
bearing on fairness of proposed settlement); *Roberts*, 2016 WL 8677312, at *8 (similar).  During
mediation, FloSports presented information regarding its financial condition that called into
question its ability to satisfy an adverse monetary judgment.  Indeed, a verdict in favor of the
Class in the full amount of claimed damages likely would force the company into bankruptcy,
with the Class in an unsecured position that may be junior to a significant amount of secured
senior bank loan facilities and other junior secured debt.  FloSports' information also showed

that its ability to fund a settlement likely would weaken over time.  Joint Decl. ¶ 13.  FloSports'
information corroborated Plaintiff's own, ongoing research on the company.  *Id.*  Plaintiff's
understanding of FloSports' ability to pay counsels in favor of resolving this matter quickly and
approving the Settlement rather than risking a substantially lower recovery (or no recovery at all)
after protracted litigation.

The Court's acceptance and approval of the Settlement is preferable in comparison to the
continuation of lengthy and expensive litigation, which would only increase risk of a
substantially lower recovery (or no recovery at all).  This factor weighs in favor of preliminary
approval of the Settlement.

***Proposed method of distributing relief***.  As detailed below and in the accompanying
Declaration of Cameron R. Azari Esq. ("Epiq Decl."), Epiq has designed a detailed and
comprehensive Notice Plan that provides the best notice to Class Members that is practicable
under the circumstances.  *See* Section IV.C, *infra*.  Importantly, the Settlement contemplates the
use of a simple, straightforward Claim Form, designed to maximize the number of claims made.
*See* Settlement, Ex. A (Claim Form).  Settlement Class Members who submit an Approved
Claim will automatically receive payment either by mailed check or by electronic means (*i.e.*,
Paypal or Venmo).  *Id.*; Settlement ¶ 2.1.2.

***Attorneys' fees***.  Plaintiff's counsel may move for an award of reasonable attorneys' fees
and reimbursement of their litigation expenses.  Fed. R. Civ. P. 23(e)(2)(C)(iii).  Specifically, in
accordance with the Settlement terms, Plaintiff's counsel anticipate requesting that the Court
award a total Fee Award, comprising both an award of attorneys' fees and reimbursement of
expenses, not to exceed one-third of the common Settlement Fund for fees.  *See* Settlement
¶¶ 1.13, 8.1.  Such a request would be well within the range of approval.  *See In re Neurontin
Mktg. & Sales Pracs. Litig.*, 58 F. Supp. 3d 167, 172 (D. Mass. 2014) (citing 2010 study of
federal class action fee awards concluding that "nearly two-thirds of class action fee awards
based on the percentage method were between 25% and 35% of the common fund."); *see also*

*Mazola v. May Dep't Stores Co.*, No. 97-cv-10872, 1999 WL 1261312, at \*4 (D. Mass. Jan. 27, 1999) ("[I]n this circuit, percentage fee awards range [from] 20% to 35% of the fund.").

Plaintiff's counsel also will apply for a service award of up to $2,000 to the Plaintiff, to compensate him for his efforts and commitment on behalf of the Settlement Class in his role as Class Representative. *See* Settlement ¶ 8.3.

Plaintiff's counsel will file their fee application, which will provide additional support for any requested attorneys' fees, reimbursement of litigation expenses, and service award, in accordance with the schedule to be set by the Court. *See* Section V, *infra*.

**Other agreements**. Pursuant to Rule 23(e)(3), there are no other agreements that would modify any term of the Settlement.

### 4. <u>The Settlement treats Class Members equitably.</u>

The proposed Settlement establishes a common fund, from which payments will be distributed to Settlement Class Members that submit valid claims on a *pro rata* basis. *See* Section III.B, *supra*. The Settlement does not provide preferential treatment to Plaintiff or any segments of the proposed Settlement Class. The injunctive relief provided by the settlement, moreover, will equally benefit all members of the Settlement Class. *See* Section III.C, *supra*. This factor thus weighs in favor of preliminary approval.

### 5. <u>Plaintiff's counsel are highly experienced in similar litigation and their opinion regarding the Settlement is entitled to considerable weight.</u>

As discussed above in Section IV.A.1.d, Plaintiff's counsel have extensive experience litigating and settling complex consumer class actions throughout the country, including those concerning data privacy. *See also* Joint Decl. ¶¶ 27–44. Based on their collective experience, Plaintiff's Counsel conclude that the Settlement provides exceptional results for the Class— particularly given the significant risks that Flosport lacks the financial capacity to fund a larger recovery—while avoiding the costs, delays, and uncertainties of continued litigation. *See id.* ¶¶ 20–23. Counsel's opinion is entitled to "significant weight" and further supports a preliminary presumption of fairness. *See Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000)

("When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight."); *Bussie*, 50 F. Supp. 2d at 77 (similar).

### C.   The Proposed Notice Plan Should Be Approved.

Before a proposed class settlement may be finally approved, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1)(B).  Where seeking certification of a Rule 23(b)(3) settlement class, the notice must also comply with Rule 23(c)(2)(B), which requires "[a]t a minimum" that the notice

> inform class members of "(i) the nature of the action; (ii) the definition of the class
> certified; (iii) the class claims, issues, or defenses; (iv) that a class member may
> enter an appearance through an attorney if the member so desires; (v) that the court
> will exclude from the class any member who requests exclusion; (vi) the time and
> manner for requesting exclusion; and (vii) the binding effect of a class judgment on
> members under Rule 23(c)(3)."

*Meaden*, 2023 WL 3529762, at *4 (quoting Fed. R. Civ. P. 23(c)(2)(B)).  In short, the notice must "inform class members of their rights to exclude themselves from the settlement and not to be bound by any judgment that subsequently issues from final approval."  *Id.* (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974)).

The proposed Notice Plan here (Settlement ¶ 4.1) meets all applicable standards.  The Notice Plan includes direct notice to all Settlement Class Members via the e-mail they used to subscribe to or otherwise sign up for FloSports' services; the establishment of a Settlement Website where Settlement Class Members can view the Settlement, the long-form Class Notice, and other key case documents; and the establishment of a Toll-Free Number where Settlement Class Members can get additional information.  *See* Epiq Decl. ¶¶ 20–28; *see also id.* ¶ 32 ("The proposed Notice Plan . . . will reach at least 90% of the identified potential Settlement Class.").  Moreover, the proposed forms of notice (*see* Settlement, Exs. B & C) inform Settlement Class Members, in clear and concise terms, about the nature of this case, the Settlement, and their rights, including all of the information required by Rule 23(c)(2)(B).  In addition, the Claim

Form is streamlined, requiring only the minimal information necessary to confirm membership in the Class and to direct financial payments to Class Members without requiring the submission of additional documents.  *See* Settlement, Ex. A (Claim Form).  The Court should approve the proposed Notice Plan.

## V.   PROPOSED SCHEDULE FOR NOTICE AND FINAL APPROVAL

The next steps in the settlement approval process are to notify Settlement Class Members of the proposed Settlement, allow them an opportunity to exclude themselves or file comments or objections, and hold a final approval hearing.  In accordance with the proposed preliminary approval order submitted herewith, Plaintiff requests the Court set the following schedule:

| Date | Event |
|---|---|
| Last day for FloSports to provide Class List[9] to the Settlement Administrator | **Fourteen (14) days after entry of Preliminary Approval Order** |
| Last day for Settlement Administrator to complete distribution of notice to the Settlement Class (the "Notice Date") | **Forty-five (45) days after entry of Preliminary Approval Order** |
| Last day for Plaintiff and Class Counsel to file motion for final approval and motion for attorneys' fees, expenses, and service awards | **Thirty (30) days after the Notice Date** |
| Exclusion/Objection Deadline | **Forty-five (45) days after the Notice Date** |
| Suggested Claims Deadline and last day for Plaintiff to file responses to any objections | **Fourteen (14) days before Final Approval Hearing** |
| Final Approval Hearing | **December 7, 2023 or on a date (at least 118 days after the Preliminary Approval Order) to be set by the Court** |

## VI.   CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant this Motion for Preliminary Approval.  A Proposed Order granting preliminary approval of the Settlement, certifying the Settlement Class, and appointing Class Counsel, and approving the Proposed Notice of Settlement, is submitted herewith.

---

[9] *See* Settlement ¶ 4.1.1.

Dated:  July 26, 2023

Respectfully submitted,

/s/      Rachel Geman
Rachel J. Geman (rgeman@lchb.com)
Douglas I. Cuthbertson
   (dcuthbertson@lchb.com)
LIEFF CABRASER HEIMANN &
   BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: (212) 355-9500

Michael K. Sheen (msheen@lchb.com)
Nicholas R. Hartmann
   (nhartmann@lchb.com)
Nabila Abdallah (nabdallah@lchb.com)
LIEFF CABRASER HEIMANN &
   BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000

Christopher J. Cormier
   (ccormier@burnscharest.com)
BURNS CHAREST LLP
4725 Wisconsin Avenue, NW
Washington, DC 20016
Telephone: (202) 577-3977

Hannah M. Crowe
   (hcrowe@burnscharest.com)
BURNS CHAREST LLP
900 Jackson Street, Suite 500
Dallas, TX 75202
Telephone: (469) 904-4550

/s/      Hank Bates
Hank Bates (hbates@cbplaw.com)
Lee Lowther (llowther@cbplaw.com)
Courtney E. Ross (cross@cbplaw.com)
CARNEY BATES & PULLIAM, PLLC
519 W. 7th Street
Little Rock, AR 72201
Telephone: (501) 312-8500

C. Andrew Dirksen (cdirksen@cerallp.com)
CERA LLP
800 Boylston Street, 16th Floor
Boston, MA 02199
Telephone: (857) 453-6555

Nicomedes Sy Herrera
   (nherrera@herrerakennedy.com)
HERRERA KENNEDY LLP
1300 Clay Street, Suite 600
Oakland, CA 94612
Telephone: (510) 422-4701

Shawn M. Kennedy
   (skennedy@herrerakennedy.com)
HERRERA KENNEDY LLP
4590 MacArthur Blvd., Suite 500
Newport Beach, CA 92660
Telephone: (949) 936-0900

*Counsel for Plaintiff and the Proposed Class*

2809046.12