**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| CHRISTOPHER J. FIORENTINO, | |
| Plaintiff, | |
| v. | Case No. 1:22-CV-11502-AK |
| FLOSPORTS, INC., | |
| Defendant. | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR FINAL**
**APPROVAL OF CLASS ACTION SETTLEMENT**

# <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    OVERVIEW OF THE LITIGATION .................................................................. 2

    A.    Summary of Plaintiff's Allegations ......................................................... 2

    B.    Informal Discovery, Mediation, and Settlement ...................................... 3

    C.    Preliminary Approval of the Settlement .................................................. 4

III.   SUMMARY OF THE SETTLEMENT'S TERMS ............................................... 5

    A.    The Settlement Class ................................................................................ 5

    B.    Settlement Benefits .................................................................................. 5

    C.    Plaintiff's Request for (i) Attorneys' Fees and Litigation Costs and (ii) a
        Service Award .......................................................................................... 6

IV.    LEGAL STANDARD .......................................................................................... 7

V.     ARGUMENT ....................................................................................................... 8

    A.    The Settlement Is Fair, Reasonable, and Adequate. ................................ 8

        1.    The Class Representative and Class Counsel Have Provided
            Excellent Representation to the Settlement Class. ...................... 8

        2.    The Settlement Was Negotiated at Arm's Length By Capable
            Counsel Informed Through a Developed Factual Record, With No
            Signs of Collusion. .................................................................... 10

        3.    The Settlement Provides Meaningful Relief to the Settlement
            Class. ......................................................................................... 111

        4.    The Settlement Treats All Settlement Class Members Equitably ............ 15

        5.    The Reaction of the Settlement Class Supports Final Approval ............ 155

        6.    Class Counsel Are Highly Qualified and Well Informed and Their
            Opinion Regarding the Settlement Is Entitled to Considerable
            Weight. ....................................................................................... 16

    B.    The Notice Plan Satisfies Rule 23 and Due Process, and Constitutes the
        Best Notice Practicable. .......................................................................... 17

VI.    CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE .................... 19

VII.   CONCLUSION .................................................................................................... 20

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Bezdek v. Vibram USA Inc.*,
 79 F. Supp. 3d 324 (D. Mass.), *aff'd*, 809 F.3d 78 (1st Cir. 2015) ..................................... 12, 13

*Bezdek v. Vibram USA, Inc.*,
 809 F.3d 78 (1st Cir. 2015) ......................................................................................... 11

*Bussie v. Allmerica Fin. Corp.*,
 50 F. Supp. 2d 59 (D. Mass. 1999) ............................................................................. 16

*City of Detroit v. Grinnell Corp.*,
 495 F.2d 448 (2d Cir.1974) ......................................................................................... 8

*Cohen v. Brown University*,
 16 F.4th 935 (1st Cir. 2021) ....................................................................................... 8

*In re Educ. Testing Serv.*,
 447 F. Supp. 2d 612 (E.D. La. 2006) ......................................................................... 17

*In re Lupron(R) Mktg. & Sales Practices Litig.*,
 228 F.R.D. 75 (D. Mass. 2005) .................................................................................. 8, 19

*In re Neurontin Mktg. & Sales Pracs. Litig.*,
 58 F. Supp. 3d 167 (D. Mass. 2014) .......................................................................... 15

*In re Pharm. Indus. Average Wholesale Price Litig.*,
 588 F.3d 24 (1st Cir. 2009) ......................................................................................... 7, 8

*Jean-Pierre v. J&L Cable TV Servs., Inc.*,
 538 F. Supp. 3d 208 (D. Mass. 2021) ........................................................................ 19

*Lazar v. Pierce*,
 757 F.2d 435 (1st Cir. 1985) ....................................................................................... 7

*Mazola v. May Dep't Stores Co.*,
 No. 97-cv-10872, 1999 WL 1261312 (D. Mass. Jan. 27, 1999) .............................. 15

*Meaden v. HarborOne Bank*,
 No. 23-cv-10467, 2023 WL 3529762 (D. Mass. May 18, 2023) .............................. 10

*Murray v. Grocery Delivery E-Servs. USA Inc.*,
 55 F.4th 340 (1st Cir. 2022) ....................................................................................... 8

*Nat'l Ass'n of Deaf v. Mass. Inst. of Tech.*,
 No. 15-cv-30024, 2020 WL 1495903 (D. Mass. Mar. 27, 2020) ............................. 8, 10

*ODonnell v. Harris Cnty., Texas*,
 No. CV H-16-1414, 2019 WL 4224040 (S.D. Tex. Sept. 5, 2019) ........................... 17

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Roberts v. TJX Cos., Inc.*,
   No. 13-cv-13142, 2016 WL 8677312 (D. Mass. Sept. 30, 2016)....................................... 10, 13

*Rolland v. Cellucci*,
   191 F.R.D. 3 (D. Mass. 2000) ..................................................................................... 16

*Sparks v. Mills*,
   626 F. Supp. 3d 131 (D. Me. 2022) ............................................................................ 15

*Walsh v. Popular, Inc.*,
   839 F. Supp. 2d 476 (D.P.R. 2012) ............................................................................. 8

*Wright v. S. New Hampshire Univ.*,
   565 F. Supp. 3d 193 (D.N.H. 2021) .......................................................................... 10

**Court Rules**

Federal Rule of Civil Procedure 23 ...................................................................................... 1, 2

Federal Rule of Civil Procedure 23(e) .............................................................................. 7, 12, 15

## I.      **INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 23 ("Rule 23"), the Class Action Settlement Agreement (Doc No. 60-1),[1] and this Court's Preliminary Approval Order (Doc No. 63), Plaintiff Christopher J. Fiorentino respectfully requests that this Court grant final approval of the Settlement. The Settlement is the product of arm's-length negotiation and mediation after robust informal discovery. It will fully resolve this litigation, create a $2.625 million non-reversionary cash fund for the benefit of the Settlement Class, and require FloSports to suspend operation of the Facebook Pixel on portions of its website relevant to compliance with the Video Privacy Protection Act ("VPPA")—*i.e.*, webpages that include video content and have a URL that identifies the video content viewed—thereby providing Settlement Class Members with valuable injunctive relief. Based on the views of experienced counsel, who were informed by the strengths and weaknesses of their respective clients' cases and defenses, these benefits are immediate and substantial, especially considering the costs, risks, and delay of continued litigation, trial, and possible appeals.

The notice program has been highly successful. As noted in the Parties' Joint Motion for Extension of Deadlines (Doc No. 64), during the initial email notice campaign, an unusually high percentage of "bounce-back" emails were received from one of the email service providers – Google/Gmail. However, collaborating with the Parties, the Settlement Administrator Epiq Class Action and Claims Solutions, Inc. ("Epiq") devised a creative solution that has achieved individual email notice reaching approximately 97.2% of the identified Settlement Class Members. The reach achieved by this supplemental notice effort surpasses both Epiq's original estimate of 90% and the

---

[1] Unless otherwise indicated, capitalized terms herein refer to and have the same meaning as in the Settlement.

high end of the Federal Judicial Center's standard of 70–95%. The exclusion and objection deadline has been extended to January 12, 2004, and the deadline for filing claims is currently February 12, 2024. To date, Epiq has not received any request for exclusion or objections to the Settlement. Class Counsel will provide an update on implementation of the notice plan and the claims process, report on any requests for exclusion, respond to any substantive objections by February 16, 2024, and provide a proposed order prior to the Final Approval Hearing on March 1, 2024.

In sum, the Settlement satisfies all criteria for final approval. Plaintiff thus respectfully requests this Court: (i) grant final approval of the Settlement as fair, reasonable, and adequate; (ii) certify the Settlement Class; (iii) find that the Notice Plan satisfies the requirements of Federal Rule of Civil Procedure 23(c) and due process and constitutes the best notice practicable under the circumstances; and (iv) enter final judgment.

## II.   OVERVIEW OF THE LITIGATION

### A.   Summary of Plaintiff's Allegations

Plaintiff filed this case on behalf of himself and similarly situated FloSports subscribers on September 13, 2022, alleging one claim for violation of the VPPA. Doc No. 1. After FloSports moved to dismiss the original complaint (Doc No. 37), Plaintiff filed an Amended Complaint on November 23, 2022. Doc No. 46. The Amended Complaint alleges that FloSports, a subscription-based digital video streaming service, intentionally installed the Facebook Pixel ("Pixel") on its website and selected the specific categories of information the Pixel would capture and transmit. Doc No. 46 ("Am. Compl.") at ¶¶ 2, 4–6, 24–28, 60. Developed by Meta Platforms, Inc. ("Meta"), the Pixel is a string of programming code that businesses like FloSports can embed on their websites to track consumers' actions and report those actions back to Meta for targeting and

delivering advertisements. *Id.* ¶¶ 23, 25–26. FloSports' use of the Pixel allowed Meta to build detailed profiles about FloSports subscribers and facilitated FloSports' use of Meta's advertising services. *Id.* ¶¶ 25–27.

FloSports knowingly configured the Pixel to share its subscribers' personally identifiable information ("PII"). *Id.* ¶¶ 20, 27–31. When a FloSports subscriber viewed a particular video on its website, FloSports sent (i) the title and URL of that video, and (ii) the Facebook ID (or "FID") of subscribers who also had a Facebook account to Meta via the Pixel. *Id.* ¶¶ 28, 31–35. A Facebook ID is a unique sequence of numbers assigned by Facebook to each user that anyone can use to determine their identity. *Id.* ¶ 29.

Plaintiff was a FloSports subscriber and Facebook user, to whom Meta assigned a unique Facebook ID linked to his Facebook profile, during the relevant period. *Id.* ¶¶ 39, 41. After paying FloSports' subscription fees, Plaintiff accessed videos on its website. *Id.* ¶¶ 40, 42. Whenever he did so, FloSports sent to Meta, without Plaintiff's consent and via the Pixel, the title and URL of the video he accessed along with his Facebook ID. *Id.* ¶ 43.

**B.    Informal Discovery, Mediation, and Settlement**

On January 17, 2023, the Parties jointly filed a motion to stay the case pending completion of formal mediation (Doc No. 51), which the Court granted the following day. Doc No. 52. Soon after the case was stayed, the Parties outlined the information needed from each other and began mediation before the Honorable Wayne R. Andersen (Ret.). At Judge Andersen's request, the Parties exchanged pre-mediation statements outlining their respective legal positions regarding the merits of Plaintiff's claims and the scope of damages. *See* Doc No. 60-2 (Joint Declaration of Rachel Geman and Hank Bates in support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement ("Joint Decl. Re: Preliminary Approval")) ¶ 11. On April 24, 2023, the Parties

participated in a day-long mediation before Judge Anderson. During that mediation, the Parties shared additional information related to the merits of Plaintiff's claims, the size and nature of the class, insurance coverage, and FloSports' financial condition. *Id.* ¶¶ 12–13. Although the Parties were unable to reach an agreement that day, they continued negotiations through Judge Andersen over the following weeks. *Id.* ¶ 14. Negotiations culminated in a double-blind mediator's proposal on May 9, 2023, which both Parties accepted on May 11, 2023. *Id.* On May 26, 2023, the Parties executed a term sheet. *Id.* ¶ 15. On July 21, 2023, the Parties finalized and executed the Settlement. *Id.* ¶ 16.

### C.     <u>Preliminary Approval of the Settlement</u>

On July 26, 2023, Plaintiff filed a Notice and Motion for Preliminary Approval of the Settlement (Doc No. 59) and supporting memorandum of law (Doc No. 60). After a hearing on August 23, 2023, this Court granted preliminary approval of the Settlement (Doc No. 63 ("PAO")), holding, *inter alia*:

- "[T]he Court will likely be able to approve the Settlement as fair, reasonable, adequate, and in the best interests of the Settlement Class";

- "[T]he Settlement substantially fulfills the purposes and objectives of the class action and provides beneficial relief to the Settlement Class, especially considering the risks and delay of continued litigation"; and

- "[T]he Settlement Agreement (a) is the result of arm's-length negotiations involving experienced counsel, with the assistance of mediator the Honorable Wayne R. Andersen (Ret.); (b) is sufficient to warrant notice of the Settlement and the Final Approval Hearing to the Settlement Class; (c) meets all applicable requirements of law, including Federal Rule of Civil Procedure 23 and the Class Action Fairness Act ('CAFA'), 28 U.S.C. § 1715; and (d) is not a finding or admission of liability by FloSports."

PAO at 2. In addition, the Court concluded it likely will certify the Settlement Class after finding that the conditions of Rule 23(a) and (b)(3) are satisfied. *Id*. at 3. The Court also appointed Plaintiff

as Class Representative and Lieff Cabraser Heimann & Bernstein, LLP; Carney Bates & Pulliam

PLLC; Burns Charest LLP; and Herrera Kennedy LLP as Class Counsel. *Id.* at 3–4.

## III.   SUMMARY OF THE SETTLEMENT'S TERMS

### A.   The Settlement Class

The Settlement Class is comprised of:

> all individuals residing in the United States who are or have been Facebook
> users that subscribed or otherwise signed up for access to FloSports' services,
> and requested or obtained any prerecorded (including on-demand replay)
> videos available on any FloSports website, during the Class Period
> September 13, 2020, to and through [August 23, 2023].

PAO at 2; Settlement ¶ 1.32.[2]

### B.   Settlement Benefits

The Settlement provides Settlement Class Members with both monetary and non-monetary

benefits. FloSports has agreed to pay $2,625,000 to create a non-reversionary common fund for

the benefit of Class Members (the "Settlement Fund"). Settlement ¶¶ 1.31 & 2.1.1. Settlement

Class Members who submit valid claims will receive a claims-made *pro rata* payment after the

deduction of settlement-related costs, including the expenses of the settlement administrator and

the costs of notice to the Class, and any Court-awarded attorneys' fees, expense reimbursements,

and named plaintiff service award. *Id.* ¶¶ 1.17, 2.1.2–2.1.3. In the event residual funds remain after

a secondary distribution, those residual funds will be disbursed as a *cy pres* award to a non-

sectarian and/or not-for-profit organization recommended by Class Counsel and approved by the

Court. *Id.* ¶ 2.1.3. No money will revert back to FloSports. *Id.*

---

[2] The Settlement Class excludes: (1) any judge presiding over this Action and members of their families; (2) FloSports, its subsidiaries, parent companies, successors, predecessors, and any entity in which the FloSports or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute a timely request for exclusion from the Class; and (4) the legal representatives, successors, or assigns of any excluded persons. PAO at 2–3; Settlement ¶ 1.32.

The Settlement requires FloSports to implement meaningful business practice changes designed to remediate the alleged VPPA violations going forward. Per the terms of the Settlement, FloSports must suspend operation of the Pixel on each page of its website that both includes video content and has a URL that identifies the video content viewed, unless and until the VPPA is: (a) amended to expressly permit (and not prohibit) the Released Claims, (b) repealed, or (c) invalidated by a judicial decision on the use of website pixel technology by the United States Supreme Court or the First Circuit Court of Appeals. *Id.* ¶ 2.2. This provision does not prevent FloSports from obtaining VPPA-compliant consent in the future should it wish to reinstitute use of the Pixel. *Id.*

In exchange for the relief described above, Plaintiff and the Class shall release all claims that have or could have been asserted against FloSports, relating to the facts, transactions, or events alleged in this action. *See id.* ¶ 1.25 (Released Claims), ¶ 1.26 (Released Parties), ¶¶ 3.1–3.2 (Release).

**C.**      **Plaintiff's Request for (i) Attorneys' Fees and Litigation Costs and (ii) a Service Award**

In accord with the Settlement Agreement, Plaintiff is requesting by separate motion an award of attorneys' fees and litigation costs (combined) equal to one-third of the Settlement Fund, or $875,000.00, to compensate Class Counsel for the work already performed in this case, all work remaining to be performed in connection with this Settlement, the risks undertaken in prosecuting this case, and their out-of-pocket litigation expenses. That motion also seeks a service award of $2,000 for Plaintiff's efforts in serving as the Class Representative. The enforceability of the Settlement is not contingent on the Court's approval of that motion. *See* Settlement ¶¶ 6.4, 8.1. In accord with the Settlement Agreement and the Preliminary Approval Order, Plaintiff's Motion for Award of Attorneys' Fees, along with this Motion, will be posted on the Settlement Website.

IV.    **LEGAL STANDARD**

Federal Rule of Civil Procedure 23(e) requires judicial approval for the settlement of class action claims. *See* Fed. R. Civ. P. 23(e). A class action should be approved if the court finds it "fair, reasonable, and adequate." *Id*. at 23(e)(2). The First Circuit has recognized a strong policy favoring settlements, especially in class action cases. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 36 (1st Cir. 2009); *Lazar v. Pierce*, 757 F.2d 435, 440 (1st Cir. 1985).

Rule 23(e)(2), as amended effective December 1, 2018, provides that in determining whether a settlement is "fair, reasonable, and adequate," the Court should consider whether:

(A)    the class representatives and counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

(i)    the costs, risks, and delay of trial and appeal;

(ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)    the terms of any proposed award of attorney's fees, including timing of payment;

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)*.*

Along with the Rule 23(e)(2) factors, courts in this Circuit also consider a modified version of the factors identified by the Second Circuit in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir.1974). *See Walsh v. Popular, Inc.*, 839 F. Supp. 2d 476, 480 (D.P.R. 2012); *In re Lupron(R) Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 93 (D. Mass. 2005); *see, e.g., Cohen v. Brown University*, 16 F.4th 935, 943 n.5 (1st Cir. 2021) ("[T]he Advisory Committee noted that the

7

amendment was not intended to 'displace any factor' previously in use."). The modified *Grinnell* factors considered in the First Circuit include:

> (1) risk, complexity, expense and duration of the case; (2) comparison of the proposed settlement with the likely result of continued litigation; (3) reaction of the class to the settlement; (4) stage of the litigation and the amount of discovery completed; and (5) quality of counsel and conduct during litigation and settlement negotiations.

*Walsh*, 839 F. Supp. 2d at 480; *Lupron(R) Mktg.*, 228 F.R.D. at 93.

## V.   <u>ARGUMENT</u>

### A.   <u>The Settlement Is Fair, Reasonable, and Adequate.</u>

A settlement is fair, reasonable, and adequate under Rule 23(e)(2) if it is procedurally and substantively fair, meaning it was reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery and provides adequate relief to the Class in comparison to continued litigation. *See, e.g.*, *Nat'l Ass'n of Deaf v. Mass. Inst. of Tech.*, No. 15-cv-30024, 2020 WL 1495903, at *4 (D. Mass. Mar. 27, 2020); *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d at 32–33. As set forth below, the Rule 23(e)(2) and modified *Grinnell* factors show that the Settlement here meets those criteria. As such, the Settlement is fair, reasonable, and adequate and should be finally approved.

### 1.   <u>The Class Representative and Class Counsel Have Provided Excellent Representation to the Settlement Class.</u>

The First Circuit has stated that Rule 23(e)(2)(A)'s "adequate representation inquiry serves to uncover conflicts of interest between named parties and the class they seek to represent." *Murray v. Grocery Delivery E-Servs. USA Inc.*, 55 F.4th 340, 345 (1st Cir. 2022) (internal quotation marks omitted). In this context, "only those conflicts that are fundamental to the suit and . . . go to the heart of the litigation" present a conflict "so substantial as to overbalance the common interests of the class members as a whole." *Murray,* 55 F.4th at 346.

Here, the Settlement Class Representative has adequately represented the Settlement Class in this action. He has been actively involved throughout the course of the litigation and Settlement, assisting Class Counsel in investigating the claims on an individual basis, reviewing case documents, remaining apprised of the litigation, submitting information necessary for informal discovery efforts and overseeing settlement negotiations. *See* Joint Declaration of Rachel Geman and Hank Bates in support of Plaintiff's Motion for Final Approval of Class Action Settlement ("Joint Decl. Re: Final Approval") at ¶ 71 and Ex. D; Joint Decl. Re: Preliminary Approval at ¶ 19. These efforts, including the risks he voluntarily took as well as the time he expended advancing the litigation, were crucial to achieving the excellent result for the Settlement Class. *Id*. He has no conflict with the Settlement Class, asserts no claim for individual relief, and was prepared to testify at trial. *Id*.

Class Counsel likewise have adequately represented the Settlement Class. They are well-qualified and experienced class action litigators. They have prosecuted similar consumer class actions involving privacy violations and, in particular, VPPA claims. *See* Joint Decl. Re: Preliminary Approval at ¶¶ 27–44 & Exs. 2–3; Joint Decl. Re: Final Approval at ¶¶ 45-46, 51; *see also* Plaintiff's Motion for Attorneys' Fees. In short, Class Counsel vigorously litigated this case by performing such tasks as: (i) conducting a thorough pre-suit investigation that resulted in the preparation of a detailed complaint; (ii) analyzing the legal arguments raised in FloSports' motion to dismiss and preparing an amended complaint; (iii) gathering Plaintiff's documents and relevant information; (iv) preparing mediation statements; (v) requesting and reviewing relevant informal discovery during mediation; (vi) participating in a full-day mediation followed by post-mediation negotiations; (vii) achieving a very favorable Settlement on behalf of the Settlement Class; (viii) presenting the proposed Settlement to the Court and obtaining an order directing notice to the

Settlement Class; and (ix) working with the Settlement Administrator to implement the Court-approved Notice Plan, to monitor settlement claims, and to address any other issues that may arise. *See* Joint Decl. Re: Preliminary Approval at ¶ 18; Joint Decl. Re: Final Approval at ¶¶ 19, 32. Moreover, Class Counsel have no conflicts of interest with the Settlement Class.

## 2. The Settlement Was Negotiated at Arm's Length By Capable Counsel Informed Through a Developed Factual Record, With No Signs of Collusion.

A settlement is procedurally fair and reasonable when it is the result of arm's-length negotiations between experienced counsel. *Nat'l Ass'n of Deaf*, 2020 WL 1495903, at *4. The assistance of an experienced, neutral mediator and pre-negotiation exchange of discovery further contributes to a settlement's procedural fairness and reasonableness. *See, e.g.*, *Meaden v. HarborOne Bank*, No. 23-cv-10467, 2023 WL 3529762, at *4 (D. Mass. May 18, 2023) (indicia of reasonableness included mediation with a neutral and exchange of transaction data and damages methodologies); *Roberts v. TJX Cos., Inc.*, No. 13-cv-13142, 2016 WL 8677312, at *6 (D. Mass. Sept. 30, 2016) ("[T]he participation of an experienced mediator[] also supports the Court's finding that the Settlement is fair, reasonable, and adequate."); *Wright v. S. New Hampshire Univ.*, 565 F. Supp. 3d 193, 206 (D.N.H. 2021) (similar).

Here, prior to mediation, the Parties prepared and reviewed detailed mediation statements and exchanged additional information and supporting materials outlining their respective legal positions regarding the merits of Plaintiff's claims, Rule 23 considerations, and the scope of damages. Joint Decl. Re: Preliminary Approval at ¶ 11. During mediation before the Honorable Wayne R. Andersen (Ret.), counsel for the Parties vigorously defended their clients' positions and exchanged additional information related to the merits of Plaintiff's claims, the size and nature of the class, insurance coverage, and Defendant's financial condition. *Id*. ¶¶ 12–13. That information allowed Plaintiff's counsel—attorneys with considerable experience in assessing the strengths and

weaknesses of VPPA cases—to make an informed assessment of the strengths and risks of the claims, as well as their value. *Id.* ¶¶ 17, 20.

While the Parties were unable to reach an agreement on the day of the mediation, they continued post-mediation negotiations through Judge Anderson. *Id.* ¶ 14. Only after weeks of additional negotiations did the Parties reach an agreement in principle via a mediator's proposal and execute a term sheet. *Id.* Thus, the Settlement here is the result of arm's-length negotiations between experienced counsel and with the assistance of an experienced mediator, following a thorough investigation and development of the factual record through informal discovery.

Moreover, the Settlement itself bears no indicia of collusion: attorneys' fees were not negotiated separately, there is no "clear sailing" provision, and under no circumstances will any amount of the Settlement Fund revert to FloSports. *Bezdek v. Vibram USA, Inc.*, 809 F.3d 78, 84 (1st Cir. 2015) (clear sailing provisions subject to "heightened scrutiny").

### 3.   <u>The Settlement Provides Meaningful Relief to the Settlement Class.</u>

When determining if the relief provided for the Settlement Class is adequate, courts must take into account "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2). These factors are informed by the modified *Grinnell* factors adopted within the First Circuit. Here, all factors weigh in favor of final approval.

> *i.     Continued litigation would be risky, complex, lengthy, and expensive.*

While Plaintiff has calculated the maximum value of his claims to be greater than the settlement amount, the maximum value of Plaintiff's and the Class's claims must be discounted

by the identifiable risks. *See, e.g.*, *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 345 (D. Mass.), *aff'd*, 809 F.3d 78 (1st Cir. 2015).

Here, the risks of continued litigation are substantial. At the outset of the litigation, FloSports vigorously denied Plaintiff's allegations of wrongdoing, filing a motion to dismiss the initial complaint. In that motion, FloSports contended that: (i) it is not a "video tape service provider" within the meaning of the VPPA; (ii) the information it allegedly disclosed does not constitute PII within the meaning of the VPPA; and (iii) any disclosures of PII were not made by Defendant "knowingly," as required by the VPPA. *See* Doc No. 16 at 8–16. An adverse decision on any one of these contentions would have resulted in dismissal of Plaintiff's claims and deprived the Settlement Class of any recovery whatsoever. Joint Decl. Re: Final Approval at ¶ 33.

Although Plaintiff remains confident that his amended pleadings would survive a motion to dismiss, he anticipates that FloSports would continue to assert many of the same defenses throughout the litigation and at summary judgment. Plaintiff also recognizes claims applying the VPPA to operation of the Pixel are still relatively untested, and while other courts have denied motions to dismiss in substantially similar cases, Plaintiff is aware of no Pixel-based VPPA case that has proceeded past class certification or to trial. *See* Joint Decl. Re: Final Approval at ¶¶ 34-35. Absent the Settlement, Plaintiff would have to conduct formal discovery, which would involve the uncertain process of obtaining relevant information from FloSports and pursuing subpoenas against third parties like Meta. At the same time, Plaintiff would bear the burden of certifying and maintaining a class on liability and damages, in the face of vigorous opposition from FloSports. Even if Plaintiff were to prevail through continued litigation and trial, FloSports would likely appeal. In sum, continued litigation would have been lengthy and expensive, and the possibility of successful class-wide recovery uncertain.

Plaintiff and Class Counsel also faced the significant risk posed by FloSports' inability to satisfy a larger judgment. *See, e.g.*, *Bezdek*, 79 F. Supp. 3d at 344 ("ability of the defendants to withstand a greater judgment" is factor bearing on fairness of proposed settlement); *Roberts*, 2016 WL 8677312, at \*8 (similar). During mediation, FloSports presented information regarding its financial condition that called into question its ability to satisfy an adverse monetary judgment. Based on this information, it is likely that a verdict in favor of the Class in the full amount of claimed damages would force the company into bankruptcy, with the Class in an unsecured position that may be junior to a significant amount of secured senior bank loan facilities and other junior secured debt. FloSports' information also showed that its ability to fund a settlement likely would weaken over time. Joint Decl. Re: Preliminary Approval ¶ 13. FloSports' information corroborated Plaintiff's own ongoing research on the company. *Id.*

> ii.   *The Settlement Provides Meaningful Relief to Settlement Class Members Through a Simple and Straightforward Claims Process.*

The Settlement provides a significant monetary recovery, especially when compared with the risks of continued litigation, as well as meaningful non-monetary relief. Any Settlement Class Member that submits a valid claim is entitled to a *pro rata* share of the Net Settlement Fund. The claims process involves a simple and straightforward Claims Form, written in plain language to encourage Settlement Class Members to file claims. Azari Decl., Ex. 8. Settlement Class Members are able to submit their Claims Form online via the Settlement Website or through the mail. *Id.* ¶ 30 & Ex. 8. Settlement Class Members have the option of receiving a digital payment or a traditional paper check. *Id*. Thus, the methods of processing Settlement Class Members Claims Forms and distributing relief to Settlement Class Members are effective and non-burdensome.

In addition, the Settlement includes valuable class-wide injunctive relief—namely, that FloSports will cease use of the Pixel (or otherwise obtain users' informed, written consent) to

prevent further violations of the VPPA and its users' privacy. Under the Settlement, FloSports was required to implement these business practice changes within 45 days of the Preliminary Approval Order, which it has done. Settlement ¶ 2.2; Joint Decl. Re: Final Approval at Ex. E. Thus, Settlement Class Members are already receiving the benefit of the Settlement's non-monetary injunctive relief.

        *iii.*    *The Requested Attorneys' Fees and Costs Are Reasonable, Reflective of the Quality of Counsel's Skills and Work, and In Line with Similar Awards Approved in the First Circuit.*

As set forth in Class Counsel's Motion for Attorneys' Fees, Class Counsel is seeking a total fee award, comprising both an award of attorneys' fees and reimbursement of expenses, not to exceed one-third of the common Settlement Fund, as well as a service award not to exceed $2,000. The requested fee award and service award are reasonable and directly in line with similar awards approved in the First Circuit. *See, e.g.*, *In re Neurontin Mktg. & Sales Pracs. Litig.*, 58 F. Supp. 3d 167, 172 (D. Mass. 2014) (citing 2010 study of federal class action fee awards concluding that "nearly two-thirds of class action fee awards based on the percentage method were between 25% and 35% of the common fund."); *Mazola v. May Dep't Stores Co.*, No. 97-cv-10872, 1999 WL 1261312, at *4 (D. Mass. Jan. 27, 1999) ("[I]n this circuit, percentage fee awards range [from] 20% to 35% of the fund."); *Sparks v. Mills*, 626 F. Supp. 3d 131, 140 (D. Me. 2022) (approving service awards of $2,000 each for the two class representatives in recognition of their "essential service").

        *iv.*    *There Is No Agreement Required to Be Identified under Rule 23(e)(3).*

Rule 23(e)(2)(C)(iv) requires consideration of "any agreement required to be identified under Rule 23(e)(3)." There are no additional agreements outside of the Settlement Agreement that require identification under Rule 23(e)(3).

Accordingly, consideration of each of Rule 23(e)(3)'s four subfactors weighs in favor of final approval.

### 4.      The Settlement Treats All Settlement Class Members Equitably.

The Settlement is designed to benefit all Class Members equally and equitably, by providing equal access to the Settlement Fund and providing meaningful injunctive relief to all Class Members regardless of whether they make a claim for monetary relief. Each Settlement Class Member may submit only one claim for monetary relief. Accordingly, each claimant that submits a valid claim will receive the same *pro rata* share of the Net Settlement Fund. *See supra* Section III(B). Moreover, because the injunctive relief occurs via FloSports and is not user specific, all Settlement Class Members are entitled to the same injunctive relief. Thus, there is no unfair or preferential treatment of any Settlement Class Member, and this factor weighs in favor of final approval.

### 5.      The Reaction of the Settlement Class Supports Final Approval.

To date, not a single request for exclusion from or objection to the Settlement has been filed. Azari Decl. at ¶ 29. Moreover, since the Settlement Website and toll-free telephone helpline went live on October 5, 2023, the Settlement Website has received 28,594 unique visitor sessions and 61,856 web pages have been presented (*id*. at ¶ 25), and the helpline has received a total of 131 calls, totaling 269 minutes (*id*. at ¶ 27). The Settlement Administrator has been processing hundreds to thousands of claims per week, and as of November 30, 2023, has received a total of 10,926 claims forms. *Id*. at ¶ 31. Epiq will continue to process Claim Forms through the claims submission period, and Class Counsel will provide the Court with updated numbers at the expiration of that deadline and prior to the Final Approval Hearing.

The lack of opposition to the Settlement further weighs in favor of final approval. *See Bezdek*, 79 F. Supp. 3d at 347 (finding low number of opt-outs and objections was indicative of class members' support as well as the adequacy of the settlement).

### 6. Class Counsel Are Highly Qualified and Well Informed and Their Opinion Regarding the Settlement Is Entitled to Considerable Weight.

As discussed above and demonstrated in Class Counsel's declarations, Class Counsel have extensive experience litigating and settling complex consumer class actions throughout the country, including those concerning data privacy. *See* Joint Decl. Re: Final Approval at ¶¶ 45, 51; Joint Decl. Re: Preliminary Approval ¶¶ 27–44 & Exs. 2–3. As such, their opinion is entitled to "significant weight." *Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000); *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 77 (D. Mass. 1999) (similar).

Based on their collective experience and their work performed in this case, it is Class Counsel's informed opinion that the Settlement represents an exceptional result and is in the best interest of the Class, particularly given the significant risks that FloSports lacks the financial capacity to fund a larger recovery, coupled with the risks, costs, delays, and uncertainties of continued litigation. *See* Joint Decl. Re: Final Approval at ¶¶ 46, 50-51.

In addition, Class Counsel's significant experience in litigating class actions and similar claims provided useful benchmarks to evaluate the merits of this case and the reasonableness of the Settlement here. *See* Doc No. 87-1 and 87-2. Accordingly, "[t]he parties . . . have ample factual and legal information with which to evaluate the merits of their competing positions and to 'make a reasoned judgment about the desirability of settling the case on the terms proposed.'" *O'Donnell v. Harris Cnty., Texas*, No. 16-cv-01414, 2019 WL 4224040, at *10 (S.D. Tex. Sept. 5, 2019) (quoting *In re Educ. Testing Serv.*, 447 F. Supp. 2d 612, 620 (E.D. La. 2006)).

**B.      The Notice Plan Satisfies Rule 23 and Due Process, and Constitutes the Best Notice Practicable.**

In accord with the Court-approved Notice Plan, on October 6, 2023, the Epiq sent 784,760 Email Notices to identified potential Settlement Class Members for whom a valid e-mail address was available.[3] *See* Azari Decl. at ¶ 15. For any E-mail Notice for which a bounce code was received indicating that the message was undeliverable for reasons such as an inactive or disabled account, the recipient's mailbox was full, or technical autoreplies, at least two additional attempts were made to deliver the Notice by e-mail. *Id*. ¶ 17. In addition, Epiq established the Settlement Website and a toll-free telephone helpline on October 5, 2023. *Id*. ¶¶ 24-28. Both the Email Notice and a Long-Form Notice, English and Spanish versions, were posted on the Settlement Website. *Id*. ¶ 24.

During implementation of the Court-approved Notice Plan, Epiq received a high percentage of "bounce-back" notifications for Email Notices sent to potential class members with Google/Gmail accounts. *Id*. at ¶ 10. Epiq subsequently initiated a remediation request with Google.[4] Because that request was still pending as of November 5, 2023, the Parties jointly moved for a modest extension of relevant deadlines to enable Epiq to resolve the remediation request with Google and/or supplement the Notice Plan. *See* Doc No. 64. This Court granted the requested extension on November 6, 2023. *See* Doc No. 65.

Thereafter, Epiq engaged in additional notice efforts to reach potential Settlement Class Members for whom Epiq had received a "bounce-back" notification. More specifically, Epiq

---

[3] After deduplication, e-mail addresses were available for 784,760 of the 785,221 records identified by Defendant and listed on the Settlement Class List. *See id*. ¶ 14. These records include FloSports' subscribers that may not have had a Facebook account during the relevant time period, and thus constitute data for "potential" Settlement Class Members.

[4] These "bounce-back" notifications indicate that the e-mails could not be delivered for reasons other than the address being inactive or disabled. Azari Decl. at ¶ 17.

created a new domain name and launched a new email campaign to send the Email Notice to the addresses that were previously undeliverable, *e.g.*, a substantial number of potential Settlement Class Members with Google/Gmail email addresses.  Azari Decl. at ¶ 12. On November 15, 2023, Epiq sent 193,699 Email Notices ("Subsequent Email Notice") to those email addresses. *Id*. at ¶ 15.

In conjunction with the Subsequent Email Notice, Epiq supplemented the Notice Plan by adding an online media campaign using banner ads displayed on the Google Display Network (the "Digital Notice"). *Id.* at ¶ 20. The Digital Notices, which ran from November 15, 2023 through November 29, 2023, were targeted to a select audience, and included a List Activation campaign, which matched the undeliverable email addresses for potential Settlement Class Members to online profiles with Google, and then served Digital Notices directly to those individuals. *Id.* at ¶¶ 20–23. In brief, through the List Activation campaign, Google matched to 195,719 potential Settlement Class Member with an undeliverable email address and was able to deliver 626,462 impressions to 144,981 of these matched individuals. *Id.* at ¶ 23. As of November 30, 2023, the combined individual notice efforts have reached approximately 97.2% of the identified potential Settlement Class Members. *Id*. at ¶ 18.[5] That reach exceeds the 70–95% range endorsed by the Federal Judicial Center and approved by courts as reasonable. *See* MANAGING CLASS ACTION LITIGATION: A POCKET GUIDE FOR JUDGES, p. 27 (3d ed. 2010); *In re Packaged Seafood Prod. Antitrust Litig*., No. 15-md-2670, 2023 WL 2483474, at \*2 (S.D. Cal. Mar. 13, 2023) ("The Federal Judicial Center has concluded that a notice plan that reaches at least 70% of the class is

---

[5] Previously, the Email Notice, without the Subsequent Email Notice, had an estimated 73% notice reach as of November 5, 2023 (*see* Doc No. 64 at ¶ 2).

reasonable."). Moreover, that reach was further enhanced by the Digital Notice and Settlement Website. *See* Azari Decl. at ¶¶ 12, 33.

Further, the Notices provide a detailed summary of the relevant information about the Settlement, including: (1) a plain and concise description of the nature of the Action and the proposed Settlement; (2) the right of Settlement Class Members to request exclusion from, or object to, the Settlement and the deadline for doing so; (3) the process for submitting a Claim Form and the deadline for doing so; (4) specifics on the date, time and place of the Final Fairness Hearing; and (5) information regarding Class Counsel's anticipated fee application and the anticipated request for the Class Representative's service award. *See* Azari Decl. ¶¶ 14-15 & Exs. 2–3.

As previously noted, as of November 30, 2023, with 10 weeks remaining for Settlement Class Members to submit claims, Epiq has received 10,926 Claim Form submissions. *See id*. at ¶ 31. Class Counsel anticipates that at least one reminder e-mail will be sent to potential Settlement Class Members who (i) read the initial E-mail Notice but forgot or failed to submit a claim due to work and everyday life commitments, or (ii) for whatever reason did not open, view, or receive the initial E-mail Notice. *See* Settlement at ¶ 4.1.3 (Class Counsel have the option to send one to two reminder notices).

The notice provided to Settlement Class Members fulfills all of the requirements of Rule 23 and due process and constitutes the best notice practicable under the circumstances.

## VI.   <u>CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE.</u>

In the context of settlement, "it is incumbent on the district court to give heightened scrutiny to the requirements of Rule 23 in order to protect absent class members." *Lupron(R) Mktg.*, 228 F.R.D. at 88 ("This cautionary approach notwithstanding, the law favors class action

settlements."); *Jean-Pierre v. J&L Cable TV Servs., Inc.*, 538 F. Supp. 3d 208, 212 (D. Mass. 2021) (same).

Here, the Court determined that it likely will be able to certify the Settlement Class for purposes of judgment on the proposed Settlement. In so holding, the Court concluded the requirements of Rule 23(a) and (b)(3) were satisfied after a thorough analysis. *See* PAO at 3. Specifically, the Court found:

> (1) that the Settlement Class is so numerous that joinder of all members is impracticable; (2) that there are questions of law and fact common to members of the Settlement Class that predominate over questions affecting only individual members (e.g., whether FloSports unlawfully disclosed to third parties Plaintiffs and Settlement Class Members' personally identifiable information without consent in a manner that violated the Video Privacy Protection Act, 18 U.S.C. § 2710, and whether Plaintiff and the Settlement Class Members are entitled to uniform statutory damages under the VPPA); (3) that Plaintiffs claims are typical of the claims of the Settlement Class; that Plaintiff and his counsel will fairly and adequately protect the interests of the Settlement Class; and (4) that a settlement class action is a superior method of fairly and efficiently adjudicating this Action.

*Id.* The facts supporting class certification remain unchanged. Accordingly, for these same reasons, the Court should find the Settlement Class satisfies the heightened scrutiny of Rule 23 and certify the Settlement Class.

## VII.   CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that this Court enter an order: (i) granting final approval of the Settlement as fair, reasonable, and adequate; (ii) certifying the Settlement Class; (iii) finding that the Notice Plan satisfies the requirements of Federal Rule of Civil Procedure 23(c) and due process and constitutes the best notice practicable under the circumstances; and (iv) entering final judgment.

Dated:  December 6, 2023

/s/      Rachel Geman
Rachel J. Geman (rgeman@lchb.com)
Douglas I. Cuthbertson
  (dcuthbertson@lchb.com)
LIEFF CABRASER HEIMANN &
  BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: (212) 355-9500

Michael K. Sheen (msheen@lchb.com)
Nicholas R. Hartmann
  (nhartmann@lchb.com)
Nabila Abdallah (nabdallah@lchb.com)
LIEFF CABRASER HEIMANN &
  BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000

Christopher J. Cormier
  (ccormier@burnscharest.com)
BURNS CHAREST LLP
4725 Wisconsin Avenue, NW
Washington, DC 20016
Telephone: (202) 577-3977

Hannah M. Crowe
  (hcrowe@burnscharest.com)
BURNS CHAREST LLP
900 Jackson Street, Suite 500
Dallas, TX 75202
Telephone: (469) 904-4550

Respectfully submitted,

/s/      Hank Bates
Hank Bates (hbates@cbplaw.com)
Lee Lowther (llowther@cbplaw.com)
Courtney E. Ross (cross@cbplaw.com)
CARNEY BATES & PULLIAM, PLLC
519 W. 7th Street
Little Rock, AR 72201
Telephone: (501) 312-8500

C. Andrew Dirksen (cdirksen@cerallp.com)
CERA LLP
800 Boylston Street, 16th Floor
Boston, MA 02199
Telephone: (857) 453-6555

Nicomedes Sy Herrera
  (nherrera@herrerakennedy.com)
HERRERA KENNEDY LLP
1300 Clay Street, Suite 600
Oakland, CA 94612
Telephone: (510) 422-4701

Shawn M. Kennedy
  (skennedy@herrerakennedy.com)
HERRERA KENNEDY LLP
4590 MacArthur Blvd., Suite 500
Newport Beach, CA 92660
Telephone: (949) 936-0900

*Counsel for Plaintiff and the Class*

21

## <u>CERTIFICATE OF SERVICE</u>

I, Hank Bates, hereby certify that this document was filed on December 6, 2023, via the

ECF system, and was sent electronically on that date to the Parties' counsel of record.


By: <u>/s/ *Hank Bates*               </u>
            Hank Bates