## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS
## EASTERN DIVISION

CHRISTOPHER J. FIORENTINO,

    Plaintiff,

  v.

FLOSPORTS, INC.,

    Defendant.

Case No. 1:22-CV-11502-AK

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES, LITIGATION COSTS, AND SERVICE AWARD

## <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ................................................................................................. 1

II.    OVERVIEW OF THE LITGATION .................................................................... 2

       A.     Summary of Plaintiff's Allegations. ....................................................... 2

       B.     Mediation and Settlement ........................................................................ 3

       C.     Preliminary Approval of the Settlement ................................................. 4

III.   SUMMARY OF THE SETTLEMENT ............................................................... 4

       A.     The Settlement Class................................................................................ 4

       B.     Settlement Benefits .................................................................................. 5

       C.     Attorneys' Fees, Litigation Costs, and Service Award........................... 6

IV.    THE REQUESTED AWARD OF ATTORNEYS' FEES IS REASONABLE
       AND APPROPRIATE. ........................................................................................ 6

       A.     Factors Considered by Courts in the First Circuit Confirm That Class
              Counsel's Fee Request Is Fair and Reasonable. ..................................... 8

              1.     The Results Achieved Through Settlement and the Number of
                     Class Members Who Will Benefit From the Settlement Support the
                     Requested Fee. ............................................................................... 8

              2.     The Skill and Experience of Counsel Support the Requested Fee............. 9

              3.     The Amount of Time Devoted to the Litigation by Class Counsel
                     Supports the Requested Fee. ......................................................... 11

              4.     The Complexity and Duration of the Litigation Support the
                     Requested Fee. .............................................................................. 12

              5.     The Risks of the Litigation Support the Requested Fee. ......................... 13

              6.     Awards in Similar Cases Support the Requested Fee............................. 14

              7.     Public Policy Considerations Support the Requested Fee. ..................... 15

              8.     The Reaction of the Class Supports the Requested Fee........................... 15

       B.     A Lodestar Cross-Check Supports the Requested Fee. ........................ 16

V.     CLASS COUNSEL'S LITIGATION EXPENSES ARE JUSTIFIED AND
       SHOULD BE REIMBURSED. .......................................................................... 17

VI.    THE REQUESTED SERVICE AWARD IS REASONABLE....................................... 18

VII.   CONCLUSION................................................................................................... 19

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Applegate v. Formed Fiber Techs., LLC*,
  No. 2:10-00473-GZS, 2013 WL 6162596 (D. Me. Nov. 21, 2013) ......................................... 15

*Arkansas Tchr. Ret. Sys. v. State St. Bank & Tr. Co.*,
  512 F. Supp. 3d 196 (D. Mass. 2020),
  *aff'd in part, appeal dismissed in part sub nom. Arkansas Tchr. Ret. Sys. v. State St. Corp.*, 25
  F.4th 55 (1st Cir. 2022) ......................................................................................................... 7

*Bacchi v. Massachusetts Mut. Life Ins. Co.*,
  No. CV 12-11280-DJC, 2017 WL 5177610 (D. Mass. Nov. 8, 2017) .................................... 7

*Bennett v. Roark Capital Grp., Inc*.,
  No. 2:09-cv-00421, 2011 WL 1703447 (D. Me. May 4, 2011) .............................................. 15

*Bettencourt v. Jeanne D'Arc Credit Union*,
  No. 17-CV-12548-NMG, 2020 WL 3316223 (D. Mass. June 17, 2020) ................................. 17

*Bezdek v. Vibram USA Inc.*,
  79 F. Supp. 3d 324 (D. Mass.), *aff'd*, 809 F.3d 78 (1st Cir. 2015) ................................. 9, 15, 17

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ......................................................................................................... 6, 7

*Carlson v. Target Enter., Inc.*,
  447 F. Supp. 3d 1 (D. Mass. 2020) ......................................................................................... 19

*Ford v. Takeda Pharms. U.S.A., Inc.*,
  No. 1:21-CV-10090-WGY, 2023 WL 3679031 (D. Mass. Mar. 31, 2023) ............................ 16

*Goldberger v. Integrated Res., Inc*.,
  209 F.3d 43 (2d Cir. 2000) ...................................................................................................... 8

*Gordan v. Mass. Mutual Life Ins. Co.*,
  No. 13-cv-30184-MAP, 2016 WL 11272044 (D. Mass. Nov. 3, 2016) ............................... 9, 14

*Hill v. State St. Corp.*,
  No. CIV.A. 09-12146-GAO, 2015 WL 127728 (D. Mass. Jan. 8, 2015) ..................... 11, 13, 17

*In re Am. Dental Partners, Inc. Sec. Litig*.,
  No. 08-10119-RGS, 2010 WL 1427404 (D. Mass. Apr. 9, 2010) ........................................... 7

*In re Cendant Corp. PRIDES Litig*.,
  243 F.3d 722 (3d Cir. 2001) .................................................................................................... 7

*In re Compact Disc Minimum Advertised Price Antitrust Litig.,*
  370 F. Supp. 2d 320 (D. Me. 2005) ........................................................................................ 18

*In re Lupron Mktg. & Sales Practices Litig*.,
  2005 WL 2006833 (D. Mass. Aug. 17, 2005) ..................................................................... 8, 18

# TABLE OF AUTHORITIES
### (continued)

**Page**

*In re Netflix Priv. Litig.*,
  No. 5:11-CV-00379 EJD, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ............................... 14

*In re Neurontin Mktg. & Sales Practices Litig.*,
  58 F. Supp. 3d 167 (D. Mass. 2014) ..................................................................................... 8

*In re Puerto Rican Cabotage Antitrust Litig.*,
  815 F. Supp. 2d 448 (D.P.R. 2011) ..................................................................................... 15

*In re Relafen Antitrust Litig.*,
  231 F.R.D. 52 (D. Mass. 2005) ............................................................................... 14, 16, 17

*In re StockerYale, Inc. Sec. Litig.*,
  No. 5:11-cv-00379-EJD, 2007 WL 4589772 (D.N.H. Dec. 18, 2007) ................................... 14

*In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*,
  56 F.3d 295 (1st Cir. 1995) ................................................................................................... 7

*In re TikTok, Inc., Consumer Priv. Litig.*,
  617 F. Supp. 3d 904 (N.D. Ill. 2022),
  *appeal dismissed sub nom. In re Tiktok Inc., Consumer Priv. Litig.*, No. 22-2682, 2022 WL
  19079999 (7th Cir. Oct. 12, 2022) ................................................................................. 7, 14

*In re Volkswagen & Audi Warranty Extension Litig.*,
  89 F. Supp. 3d 155 (D. Mass. 2015) .................................................................................... 16

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
  364 F. Supp. 2d 980 (D. Minn. 2005) ................................................................................... 10

*Lauture v. A.C. Moore Arts & Crafts, Inc.*,
  No. 17-cv-10219-JGD, 2017 WL 6460244 (D. Mass. June 8, 2017) ..................................... 18

*Lionbridge Techs., LLC v. Valley Forge Ins. Co.*,
  No. CV 20-10014-PBS, 2021 WL 8999590 (D. Mass. May 18, 2021),
  *aff'd*, 53 F.4th 711 (1st Cir. 2022) ..................................................................................... 16

*McCormick v. Festiva Dev. Grp., LLC*,
  No. 2:09-cv-00365-GZS, 2011 WL 2457883 (D. Me. June 20, 2011) ................................... 14

*Mills v. Elec. Auto-Lite Co.*,
  396 U.S. 375 (1970) ............................................................................................................ 6

*New England Carpenters Health Benefits Fund v. First Databank, Inc.*,
  No. 05-11148, 2009 WL 2408560 (D. Mass. Aug. 3, 2009) .................................................. 17

*Roberts v. TJX Companies, Inc.*,
  No. 13-cv-13142, 2016 WL 8677312 (D. Mass. Sept. 30, 2016) ........................... 8, 13, 14, 17

*Schwartz v. TXU Corp.*,
  No. 3:02-CV-2243-K, 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ...................................... 10

**TABLE OF AUTHORITIES**
(continued)

Page

*Sparks v. Mills*,
    626 F. Supp. 3d 131 (D. Me. 2022)............................................................................... 19

*Sylvester v. CIGNA Corp.*,
    401 F. Supp. 2d 147 (D. Me. 2005)............................................................................... 15

*Venegas v. Global Aircraft Service, Ins.*,
    No. 2:14-cv-249-NT, 2017 WL 2730025 (D. Me. June 26, 2017)............................................. 18

**Court Rules**

Fed. R. Civ. P. 23(h) ................................................................................................................. 6

## I.    **INTRODUCTION**

As detailed in the concurrently filed Memorandum in Support of Motion for Final Approval of Class Action Settlement, Plaintiff Christopher J. Fiorentino ("Plaintiff" or "Settlement Class Representative") has reached a Settlement with Defendant FloSports, Inc. ("FloSports" or "Defendant") (collectively with Plaintiff, the "Parties") that provides significant benefits, both monetary and non-monetary, to Settlement Class Members.[1] More specifically, the Settlement provides for a $2.625 million non-reversionary common fund (the "Gross Settlement Fund") for the benefit of Settlement Class Members. In addition, the Settlement requires FloSports to suspend the operation of the Facebook Pixel on portions of its website relevant to Video Privacy Protection Act ("VPPA") compliance—*i.e.*, webpages that both include video content and have a URL that identifies the video content viewed—thereby providing Settlement Class Members with valuable injunctive relief.

As compensation for their efforts in successfully litigating this action and in accordance with the Settlement terms, Class Counsel respectfully request attorneys' fees of $852,618.31 and reimbursement of Class Counsel's out-of-pocket litigation costs of $22,381.69, which together represent one-third of the Gross Settlement Fund, or $875,000. Class Counsel also seeks a service award for the Settlement Class Representative in the amount of $2,000 in recognition of his role in prosecuting the litigation on behalf of the Settlement Class.

The requested attorneys' fees, litigation costs, and service award are fair and reasonable based on, *inter alia*, the relief obtained in this action; the skill, time and effort required to obtain such relief; the complex legal issues and technical matters presented; the contingent nature of the

---

[1] *See* Class Action Settlement Agreement (Doc No. 60-1) (the "Settlement"). Unless otherwise indicated, capitalized terms herein refer to and have the same meaning as in the Settlement.

representation; the risks assumed; customary fees and awards in similar actions; and the favorable response from the Settlement Class. Thus, for the reasons stated herein, Class Counsel and Plaintiff respectfully request that the Court approve the requested attorneys' fees, litigation costs, and service award.

## II.    **OVERVIEW OF THE LITGATION**

### A.    **Summary of Plaintiff's Allegations.**

Plaintiff filed this case on behalf of himself and similarly situated FloSports subscribers on September 13, 2022, alleging one claim for violation of the VPPA. Doc No. 1. After FloSports moved to dismiss the original complaint (Doc No. 37), Plaintiff filed an Amended Complaint on November 23, 2022. Doc No. 46. The Amended Complaint alleges that FloSports, a subscription-based digital video streaming service, intentionally installed the Facebook Pixel ("Pixel") on its website and selected the specific categories of information the Pixel would capture and transmit. Doc No. 46 ("Am. Compl.") at ¶¶ 2, 4–6, 24–28, 60. Developed by Meta Platforms, Inc. ("Meta"), the Pixel is a string of programming code that businesses like FloSports can embed on their websites to track consumers' actions and report those actions back to Meta for targeting and delivering advertisements. *Id.* ¶¶ 23, 25–26. FloSports' use of the Pixel allowed Meta to build detailed profiles about FloSports subscribers and facilitated FloSports' use of Meta's advertising services. *Id.* ¶¶ 25–27.

FloSports knowingly configured the Pixel to share its subscribers' personally identifiable information ("PII"). *Id.* ¶¶ 20, 27–31. When a FloSports subscriber viewed a particular video on its website, FloSports sent the title and URL of that video to Meta via the Pixel. *Id.* ¶¶ 28, 31–35. At the same time, FloSports sends the Facebook ID (or "FID") of any subscriber who also has a Facebook account, using the "c_user" cookie, to Meta via the Pixel. *Id.* A Facebook ID is a unique

sequence of numbers assigned by Facebook to each user that anyone can use to determine their identity. *Id.* ¶ 29. Any ordinary person can type "facebook.com/[FID]" into a web browser to view that subscriber's Facebook profile and all the personal information it contains. *Id.* ¶¶ 29, 36–37.

Plaintiff was a FloSports subscriber and Facebook user, to whom Meta assigned a unique Facebook ID linked to his Facebook profile, during the relevant period. *Id.* ¶¶ 39, 41. After paying FloSports' subscription fees, Plaintiff accessed videos on its website. *Id.* ¶¶ 40, 42. Whenever he did so, FloSports sent to Meta, without Plaintiff's consent and via the Pixel, the title and URL of the video he accessed and his Facebook ID. *Id.* ¶ 43.

### B.    Mediation and Settlement

On January 17, 2023, the Parties jointly filed a motion to stay the case pending completion of formal mediation (Doc No. 51), which the Court granted the following day. Doc No. 52. Soon after the case was stayed, the Parties outlined the information needed from each other and began mediation before the Honorable Wayne R. Andersen (Ret.). At Judge Andersen's request, the Parties exchanged pre-mediation statements outlining their respective legal positions regarding the merits of Plaintiff's claims and the scope of damages. *See* Doc No. 60-2 (Joint Declaration of Rachel Geman and Hank Bates in support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement ("Joint Decl." Re: Preliminary Approval)) ¶ 11. On April 24, 2023, the Parties participated in a day-long mediation before Judge Anderson. During that mediation, the Parties shared additional information, including related to the merits of Plaintiff's claims, the size and nature of the class, insurance coverage, and FloSports' financial condition. *Id.* ¶¶ 12-13. Although the Parties were unable to reach an agreement that day, they continued negotiations through Judge Andersen over the following weeks. *Id.* ¶ 14. Negotiations culminated in a double-blind mediator's proposal on May 9, 2023, which both parties accepted on May 11, 2023. *Id.* On May 26, 2023, the

Parties executed a term sheet. *Id.* ¶ 15. On July 21, 2023, the Parties finalized and executed the Settlement. *Id.* ¶ 16.

       C.      **Preliminary Approval of the Settlement**

On July 26, 2023, Plaintiff filed a Notice and Motion for Preliminary Approval of the Settlement (Doc No. 59) and supporting memorandum of law (Doc No. 60). After a hearing on August 23, 2023, this Court granted preliminary approval of the Settlement (Doc No. 63 ("Preliminary Approval Order" or "PAO")), holding, *inter alia*:

- "[T]he Court will likely be able to approve the Settlement as fair, reasonable, adequate, and in the best interests of the Settlement Class;"

- "[T]he Settlement substantially fulfills the purposes and objectives of the class action and provides beneficial relief to the Settlement Class, especially considering the risks and delay of continued litigation;" and

- "[T]he Settlement Agreement (a) is the result of arm's-length negotiations involving experienced counsel, with the assistance of mediator the Honorable Wayne R. Andersen (Ret.); (b) is sufficient to warrant notice of the Settlement and the Final Approval Hearing to the Settlement Class; (c) meets all applicable requirements of law, including Federal Rule of Civil Procedure 23 and the Class Action Fairness Act ('CAFA'), 28 U.S.C. § 1715; and (d) is not a finding or admission of liability by FloSports."

*Id*. at p. 2. In addition, the Court concluded it likely will certify the Settlement Class after finding that the conditions of Rule 23(a) and (b)(3) are satisfied. *Id*. at 3. The Court also appointed Plaintiff as Class Representative and Rachel Geman of Lieff Cabraser Heimann & Bernstein, LLP; Hank Bates of Carney Bates & Pulliam PLLC; Christopher Cormier of Burns Charest LLP, and Shawn Kennedy of Herrera Kennedy LLP as Class Counsel. *Id.* at 3–4.

**III.    SUMMARY OF THE SETTLEMENT**

       A.      **The Settlement Class**

The Settlement Class is comprised of:

> all individuals residing in the United States who are or have been Facebook
> users that subscribed or otherwise signed up for access to FloSports' services,

and requested or obtained any prerecorded (including on-demand replay) videos available on any FloSports website, during the Class Period September 13, 2020, to and through [August 23, 2023].

PAO at p. 2; Settlement ¶ 1.32.[2]

**B.    <u>Settlement Benefits</u>**

The Settlement provides Settlement Class Members with both monetary and non-monetary benefits. FloSports has agreed to pay $2,625,000 to create a non-reversionary common fund for the benefit of Class Members (the "Settlement Fund"). Settlement ¶¶ 1.31 & 2.1.1. Settlement Class Members who submit valid claims will receive a claims-made *pro rata* payment after the deduction of settlement-related costs, including the expenses of the settlement administrator and the costs of notice to the Class, and any Court-awarded attorneys' fees, expense reimbursements, and named plaintiff service award. *Id.* ¶¶ 1.17, 2.1.2–2.1.3. In the event residual funds remain after a secondary distribution, those residual funds will be disbursed as a *cy pres* award to a non-sectarian and/or not-for-profit organization recommended by Class Counsel and approved by the Court. *Id.* ¶ 2.1.3. No money will revert to FloSports. *Id.*

The Settlement requires FloSports to implement meaningful business practice changes designed to remediate the alleged VPPA violations going forward. Per the terms of the Settlement, FloSports must suspend operation of the Pixel on any pages of its website that both include video content and have a URL that identifies the video content viewed, unless and until the VPPA is: (a) amended to expressly permit (and not prohibit) the Released Claims, (b) repealed, or (c) invalidated by a judicial decision on the use of website pixel technology by the United States

---

[2] The Settlement Class excludes: (1) any judge presiding over this Action and members of their families; (2) FloSports, its subsidiaries, parent companies, successors, predecessors, and any entity in which the FloSports or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute a timely request for exclusion from the Class; and (4) the legal representatives, successors, or assigns of any such excluded persons. PAO at 2–3; Settlement ¶ 1.32.

Supreme Court or the First Circuit Court of Appeals. *Id.* ¶ 2.2. This provision does not prevent FloSports from obtaining VPPA-compliant consent in the future should it wish to reinstitute use of the Pixel. *Id.*

In exchange for the relief described above, Plaintiff and the Class shall release all claims that have or could have been asserted against FloSports, relating to the facts, transactions, or events alleged in this action. *See id.* ¶ 1.25 (Released Claims), ¶ 1.26 (Released Parties), ¶¶ 3.1–3.2 (Release).

### C.    <u>Attorneys' Fees, Litigation Costs, and Service Award</u>

The Settlement Agreement provides that Class Counsel may seek an award of reasonable attorneys' fees and reimbursement of their litigation costs from the Gross Settlement Fund, in an aggregate amount not to exceed one-third thereof. *Id*. ¶ 8.1. The Settlement Agreement also provides that Class Counsel may seek a service award for the Class Representative in an amount not to exceed $2,000. *Id*. ¶ 8.3. In accord with the foregoing provisions, Class Counsel is seeking (i) attorneys' fees of $852,618.31 and litigation costs of $22,381.69, totaling $875,000.00, or one-third of the Gross Settlement Fund; and (ii) a $2,000 service award for the Class Representative.

### IV.    <u>THE REQUESTED AWARD OF ATTORNEYS' FEES IS REASONABLE AND APPROPRIATE.</u>

Fed. R. Civ. P. 23 provides that a "court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the Parties' agreement." Fed. R. Civ. P. 23(h). In accord with Rule 23, the Supreme Court has held that where a party maintains a suit that results in the creation of a fund for the benefit of a class, the costs of the litigation, including an award of reasonable attorneys' fees, should be recovered from the fund created by the litigation. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392 (1970).

The "common-fund" doctrine allows counsel to draw a reasonable fee as a percentage of the fund created by a settlement for the benefit of the class. *Boeing*, 444 U.S. at 478. As held by the First Circuit, the "percentage of fund" approach offers distinctive advantages including: (1) it is less burdensome to administer; (2) it reduces the possibility of collateral disputes; (3) it enhances the efficiency throughout the litigation; (4) it is less taxing on judicial resources; and (5) it better approximates the workings of the marketplace. *In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995).

For these reasons, the First Circuit has stated that the "use of the [percentage of fund] method in common fund cases is the prevailing praxis." *Id.*; *see also In re Am. Dental Partners, Inc. Sec. Litig.*, No. 08-10119-RGS, 2010 WL 1427404, at *1 (D. Mass. Apr. 9, 2010) ("In common fund cases, the trend increasingly favors the calculation of a fee award by use of the percentage of the fund (POF) method."). And, "[a]lthough the First Circuit has not set a presumptive benchmark for percentage of fund awards, other courts in the Circuit have noted that such benchmark has been between twenty to thirty-five percent." *Bacchi v. Massachusetts Mut. Life Ins. Co.*, No. CV 12-11280-DJC, 2017 WL 5177610, at *4 (D. Mass. Nov. 8, 2017).[3]

---

[3] Generally, "the expectation [is] that, absent unusual circumstances, the percentage will decrease as the size of the fund increases." *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 736 (3d Cir. 2001); *see also In re Relafen Antitrust Litig.*, 231 F.R.D. at 81 ("There are also several cases that suggest that the standard percentage is generally lower as the common fund increases."). Thus, it is the "mega funds," those in excess of $50 million, which tend to be at the low end of this sliding scale. *Arkansas Tchr. Ret. Sys. v. State St. Bank & Tr. Co.*, 512 F. Supp. 3d 196, 217 (D. Mass. 2020), *aff'd in part, appeal dismissed in part sub nom. Arkansas Tchr. Ret. Sys. v. State St. Corp.*, 25 F.4th 55 (1st Cir. 2022) (awarding 20% of the $300,000,000 common fund, or $60,000,000, and finding it is within the reasonable range and most appropriate); *see also In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 940 (N.D. Ill. 2022), *appeal dismissed sub nom. In re Tiktok Inc., Consumer Priv. Litig.*, No. 22-2682, 2022 WL 19079999 (7th Cir. Oct. 12, 2022) ("Although many sliding-scale cases involve large fund sizes, many courts confronted with settlement funds in the tens of millions do not use a sliding-scale formula.").

In weighing an appropriate attorney fee award under a common fund request, the First Circuit has not set forth a fixed set of factors, however, courts generally consider the *Goldberger* factors: "(1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations." *In re Neurontin Mktg. & Sales Practices Litig.*, 58 F. Supp. 3d 167, 170 (D. Mass. 2014) (citing *In re Lupron Mktg. & Sales Practices Litig.*, 2005 WL 2006833, at *3 (D. Mass. Aug. 17, 2005), citing *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)).

The Settlement here creates a common fund of $2,625,000. Class Counsel requests an award of attorneys' fees in the amount of $852,618.31, equal to approximately 32.5% of the fund, for their efforts on behalf of the Settlement Class. This amount is reasonable, fair, and fully justified.

**A.  Factors Considered by Courts in the First Circuit Confirm That Class Counsel's Fee Request Is Fair and Reasonable.**

Applying the guideposts referenced above, Class Counsel's fee request is fair and reasonable. *See e.g. Roberts v. TJX Companies, Inc.*, No. 13-cv-13142, 2016 WL 8677312, at *11 (D. Mass. Sept. 30, 2016).

**1.  The Results Achieved Through Settlement and the Number of Class Members Who Will Benefit From the Settlement Support the Requested Fee.**

The Settlement yields significant and valuable benefits for the Settlement Class, especially when considering the costs, risks, and delay of continued litigation, trial, and possible appeals. *See* Plaintiff's Memorandum in Support of Motion for Final Approval, concurrently filed herewith. Specifically, the Settlement establishes a non-reversionary common fund of $2.625 million to pay

all valid claims, the cost of settlement administration, and attorneys' fees and costs. In addition to these monetary benefits, the Settlement provides for meaningful injunctive relief in the form of business practice changes designed to remediate the alleged VPPA violations going forward: FloSports agreed to and per the terms of the Settlement has already suspended operation of the Pixel on each page of its website that both includes video content and has a URL that identifies the video content viewed. *See* Joint Declaration of Rachel Geman and Hank Bates in support of Plaintiff's Motion for Final Approval of Class Action Settlement ("Joint Decl. Re: Final Approval") at ¶ 9 and Ex. E. This injunctive relief adds substantial value to the Settlement. *See, e.g.*, *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 346 (D. Mass.), *aff'd,* 809 F.3d 78 (1st Cir. 2015) ("Injunctive relief has been recognized as a meaningful component of a settlement agreement, particularly where it mimics the injunctive relief that the plaintiffs could achieve following trial."); *Gordan v. Mass. Mutual Life Ins. Co.*, No. 13-cv-30184-MAP, 2016 WL 11272044, at *1 (D. Mass. Nov. 3, 2016) (finding the affirmative relief achieved in addition to the monetary benefits "make the true value of the settlement far higher."). These results were achieved through the work and skill of Class Counsel and will benefit all Settlement Class Members regardless of whether they file a claim form.

In short, this Settlement stands to provide Settlement Class Members with substantial benefits now and to avoid the risk and uncertainty of further litigation, as well as a possible trial. Accordingly, consideration of this factor weighs in favor of Class Counsel's fee request. *Gordan*, 2016 WL 11272044, at *2.

## 2.    The Skill and Experience of Counsel Support the Requested Fee.

The prosecution and management of a complex class action requires unique legal skills and abilities, as do claims applying the VPPA to operation of the Pixel. As demonstrated by Class

Counsel's declarations and firm resumes, Class Counsel are experienced and skilled practitioner firms in the consumer protection class action field, and have long and successful track records in such cases. *See* Joint Decl. Re: Final Approval at ¶¶ 45, 50-51; Doc No. 60-2 (Joint Declaration of Rachel Geman and Hank Bates in support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement ("Joint Decl. Re: Preliminary Approval") at ¶¶ 27-44 and Exs. 2-3. Their willingness and ability to undertake complex and difficult cases such as this and their commitment to this litigation added valuable experience to this litigation, as well as leverage in the settlement negotiations. *See Bezdek*, 79 F. Supp. 3d at 350 (finding skill of lawyers "nationally known for and greatly experienced in representing plaintiffs" in class action lawsuits weighed in favor of fee award).

The quality of the work performed by Class Counsel in attaining the Settlement should also be evaluated in light of the quality of the opposition. *See In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 995 (D. Minn. 2005) ("Defendants' attorneys . . . consistently put plaintiffs' counsel through the paces. All counsel consistently demonstrated considerable skill and cooperation to bring this matter to an amicable conclusion."). Here, FloSports has been represented by highly experienced lawyers throughout the litigation from Holland & Knight, LLP, a well-respected law firm with more than 2,200 attorneys practicing in over 250 areas. *See* https://www.hklaw.com. Notwithstanding this formidable opposition, Class Counsel developed a strong case and negotiated settlement terms that are highly favorable to Settlement Class Members. *See Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 WL 3148350, at *30 (N.D. Tex. Nov. 8, 2005) ("The ability of plaintiffs' counsel to obtain such a favorable settlement for the Class in the face of such formidable legal opposition confirms the superior

quality of their representation."). Accordingly, this factor further supports the requested attorneys' fees.

**3.      The Amount of Time Devoted to the Litigation by Class Counsel Supports the Requested Fee.**

The extensive time and effort expended by Class Counsel in prosecuting the litigation and achieving the Settlement also establish that the requested fee is justified and reasonable. *See Hill v. State St. Corp.*, No. CIV.A. 09-12146-GAO, 2015 WL 127728, at *19 (D. Mass. Jan. 8, 2015). Class Counsel's declarations detail the substantial efforts of Class Counsel in prosecuting Plaintiff's claims. In brief, Class Counsel vigorously litigated this case by performing such tasks as: (i) conducting a thorough pre-suit investigation that resulted in the preparation of a detailed complaint; (ii) analyzing the legal arguments raised in FloSports' motion to dismiss and preparing an amended complaint; (iii) gathering Plaintiff's documents and relevant information; (iv) preparing mediation statements; (v) requesting and reviewing relevant informal discovery during mediation; (vi) participating in in a full-day mediation followed by post-mediation negotiations; (vii) achieving a very favorable Settlement on behalf of the Settlement Class and (viii) negotiating comprehensive settlement papers and working with the Settlement Administrator to implement to implement the Notice Plan. *See* Joint Decl. Re: Preliminary Approval at ¶ 18; Joint Decl. Re: Final Approval at ¶¶ 19, 32. Class Counsel's efforts demonstrate that they vigorously and zealously represented the Class.

Collectively, based on their audited time records, Class Counsel have devoted 779.50 hours to the prosecution of this action. *See* Joint Decl. Re: Final Approval at ¶¶ 55-56. In addition, Class Counsel will devote further time and effort appearing at the final approval hearing, responding to inquiries from Settlement Class Members going forward, addressing any objections that could arise and monitoring the distribution of settlement payments by the Settlement Administrator until

the fund is expended and closed. The substantial time and effort devoted to this case, taken with the risk of no recovery to counsel whatsoever, support the requested award in this case, and demonstrate that the requested fee here has been well earned.

### 4.    The Complexity and Duration of the Litigation Support the Requested Fee.

The complexity and duration of the litigation also weigh in favor of the requested fee. The VPPA claims in this action involve complicated issues concerning FloSports' business and practices related to its use of the Meta Pixel code and consumers' privacy rights. Thus, Class Counsel was required to develop an understanding of FloSports' use of Pixel technology, its video content, class size, class damages, and more. Throughout the litigation, Defendant has vigorously denied Plaintiff's allegations of wrongdoing, filing a motion to dismiss the initial complaint, and Plaintiff anticipates that FloSports would continue to defend its position should the case be litigated further. Moreover, claims applying the VPPA to operation of the Pixel are still relatively novel in that no Pixel-based VPPA case has yet proceeded to summary judgment, let alone trial.

While formal discovery in this litigation had not yet commenced, the Parties informally exchanged information to allow Class Counsel to assess the strengths and weaknesses of the VPPA claims, as well as FloSports' defenses, and to make an informed assessment of the value of Plaintiff's claims. For example, prior to mediation, the Parties prepared and reviewed detailed mediation statements and exchanged additional information and supporting materials outlining their respective legal positions regarding the merits of Plaintiff's claims, Rule 23 considerations, and the scope of damages. Joint Decl. Re: Preliminary Approval at ¶ 11. During mediation before the Honorable Wayne R. Andersen (Ret.), counsel for the Parties exchanged additional information related to the merits of Plaintiff's claims, the size and nature of the class, insurance coverage, and Defendant's limited financial condition. *Id.* at ¶ 12-13. Thus, notwithstanding the novelty and

complexities of Plaintiff's claims, Class Counsel, through extensive factual investigation and targeted informal discovery, were able to skillfully and efficiently negotiate a successful resolution on behalf of the Settlement Class. *See* Joint Decl. Re: Final Approval at ¶¶ 30-40, 45-48, 50-54. Accordingly, the magnitude and complexity of the issues presented and the duration of the litigation support the conclusion that the requested fee is fair and reasonable.

### 5.      The Risks of the Litigation Support the Requested Fee.

A case undertaken on a contingent fee basis requires commitment of time and resources in the face of significant risks of loss and/or delay. As such, the risk of the litigation is a key factor in determining an appropriate fee award. *See Roberts*, 2016 WL 8677312, at *13 ("[M]ost importantly, Class Counsel took the case on a contingency fee basis, assuming significant risk in litigating the case."); *Hill*, 2015 WL 127728, at *18 ("consider[ing] . . . contingency risk in awarding attorneys' fees" when counsel "litigated the Action on a fully contingent basis and were exposed to the risk that they might obtain no compensation for their efforts on behalf of the class").

Here, in pursuing this litigation on a contingency basis, Class Counsel understood that it was undertaking an expensive and complex litigation with no guarantee of receiving compensation for the enormous investment in time and money that the case would require. Joint Decl. Re: Final Approval at ¶50.

Moreover, the risks involved in this litigation were plentiful. Plaintiff faced very significant risks to withstanding a challenge to the pleadings, to certifying and maintaining a class, and eventually to proving liability and damages on relatively untested VPPA claims at trial. *See* Plaintiff's Memorandum in Support of Motion for Final Approval. In addition, Class Counsel faced substantial risks and uncertainties related to FloSports' financial condition, which called into question its ability to satisfy an adverse monetary judgment and revealed that its ability to fund a

class settlement would likely weaken over time. *See* Joint Decl. Re: Final Approval at ¶¶ 53-54. Absent the Settlement, Plaintiff would have to conduct formal discovery, which would involve the uncertain process of obtaining relevant information from FloSports and pursuing subpoenas against third parties like Meta, substantially increasing litigation costs. Thus, formal discovery, pretrial motion practice, trial and appeal would involve potentially several additional years of litigation and could deprive the Class of any relief due to FloSports' financial condition.

Under these circumstances, the requested fee is fully appropriate.

### 6.    <u>Awards in Similar Cases Support the Requested Fee.</u>

Awards in similar cases support the requested fee. Indeed, the fee requested in this case is in accord with awards in other class action cases involving VPPA claims. *See In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d at 940 (N.D. Ill. 2022) (awarding one-third of $87,843.787.95 (the net common fund), *i.e.* $29,279,203.44, in attorneys' fees in case involving VPPA claim); *In re Netflix Priv. Litig.*, No. 5:11-CV-00379 EJD, 2013 WL 1120801, at *9 (N.D. Cal. Mar. 18, 2013) (awarding attorneys' fees of $2.250 million, plus the $25,000 in costs and expenses in case involving VPPA claims).

Additionally, the requested fee is within the range of fee awards in class action cases in this district and the First Circuit. *Roberts*, 2016 WL 8677312 at *9 (awarding 1/3 of the $4.25 million settlement as a percentage of the fund); *Gordan*, 2016 WL 11272044, at *2 ("the one-third fee requested here is fair and reasonable"); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 85-89 (D. Mass. 2005) (approving 33% of $67 million settlement as a percentage of the fund); *In re StockerYale, Inc. Sec. Litig.*, No. 5:11-cv-00379-EJD, 2007 WL 4589772, at *6 (D.N.H. Dec. 18, 2007) (awarding fees in the amount of 33% of settlement fund); *McCormick v. Festiva Dev. Grp., LLC*, No. 2:09-cv-00365-GZS, 2011 WL 2457883, at *1 (D. Me. June 20, 2011) (awarding fees

in the amount of one third of settlement fund); *Applegate v. Formed Fiber Techs., LLC*, No. 2:10-00473-GZS, 2013 WL 6162596, at *1 (D. Me. Nov. 21, 2013) (same); *Bennett v. Roark Capital Grp., Inc.*, No. 2:09-cv-00421, 2011 WL 1703447, at *2 (D. Me. May 4, 2011) (same); *Sylvester v. CIGNA Corp.*, 401 F. Supp. 2d 147, 151 (D. Me. 2005) (awarding one-third of the $2.3 million settlement as a percentage of the fund).

Thus, Class Counsel's fee request is directly in line with awards in similar cases and weighs in favor of the requested fee.

### 7. Public Policy Considerations Support the Requested Fee.

"Class action plaintiffs' attorneys provide an invaluable service by aggregating the seemingly insignificant harms endured by a large multitude into a distinct sum where the collective injury can then become apparent." *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 463 (D.P.R. 2011). Here, given the risk and expense in pursuing class members' VPPA claims, "it would likely not be economical for an individual Class Member to pursue such litigation on their own." *Id.* Moreover, the VPPA claims seek to redress consumers' fundamental privacy rights. Thus, this class action serves important public policy of ensuring that consumers' privacy rights be protected even where individual damages are minimal. Thus, the requested fee here serves an important public policy of ensuring that consumer claims can be pursued by experienced and competent counsel.

### 8. The Reaction of the Class Supports the Requested Fee.

To date, no Settlement Class Member has objected to any portion of the Settlement, including Class Counsel's fee request, nor requested to be excluded from the Settlement. Declaration of Cameron R. Azari, Esq. on Implementation of Notice Plan and Notices ("Azari

Decl.") at ¶ 29. Thus, to date, the reaction of the Settlement Class has been favorable. *See, e.g.,*
*Bezdek*, 79 F. Supp. 3d at 351.

**B.**    **A Lodestar Cross-Check Supports the Requested Fee.**

The requested attorneys' fees and expenses are reasonable under the lodestar method. "The
First Circuit does not require a court to cross check the percentage of fund against the lodestar in
its determination of the reasonableness of the requested fee." *In re Relafen Antitrust Litig.*, 231
F.R.D. at 81. Nonetheless, courts often consider the lodestar when determining the reasonableness
of a fee calculated as a percentage of the fund. *See id*. In addition, multipliers of lodestar amounts
is "an accepted means of enhancing a lodestar appropriately to reflect, for example, the scale of
the results achieved by prevailing counsel or the risks counsel took in pursuing contingent fees."
*In re Volkswagen & Audi Warranty Extension Litig.*, 89 F. Supp. 3d 155, 165 (D. Mass. 2015)
(collecting cases).

Class Counsel's lodestar in this action is $592,256.50, which is based on 779.5 audited
hours of attorney and professional staff time. *See* Joint Decl. Re: Final Approval at ¶¶ 55-56 and
Exs. A-C, and F-G. The rates of the attorneys are fully supported by the skill and experience of
Class Counsel and are within the market rate for their services. *See id*. at ¶¶ 45, 50-67; *see also*
*Ford v. Takeda Pharms. U.S.A., Inc.*, No. 1:21-CV-10090-WGY, 2023 WL 3679031, at *2 (D.
Mass. Mar. 31, 2023) (approving hourly rates of $1,370 for attorneys with at least 25 years of
experience; $1,165 for attorneys with 15–24 years of experience; $840 for attorneys with 5–14
years of experience; $635 for attorneys with 0–4 years of experience; and $425 for paralegals and
law clerks); *Lionbridge Techs., LLC v. Valley Forge Ins. Co.*, No. CV 20-10014-PBS, 2021 WL
8999590, at *1 (D. Mass. May 18, 2021), *aff'd*, 53 F.4th 711 (1st Cir. 2022) (noting defense counsel
charged hourly rates for partners of $1,475 and associates ranged from at least $700 to $900).

16

Based on the lodestar to date, the lodestar results in a multiplier of 1.48. Joint Decl. Re: Final Approval at ¶ 59. This multiplier is well within the range of what other courts in this district and the First Circuit have approved. *See Bettencourt v. Jeanne D'Arc Credit Union*, No. 17-CV-12548-NMG, 2020 WL 3316223, at *3 (D. Mass. June 17, 2020) (finding multiplier of 1.20 was "well within the range of multipliers typically allowed by this Court (1x to 2.7x)"); *Roberts*, 2016 WL 8677312, at *13 (court approved a multiplier of 1.96); *Bacchi,* 2017 WL 5177610, at *5 (approving multiplier of 1.31); *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, No. 05-11148, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (approving lodestar multiplier of about 8.3); *In re Relafen*, 231 F.R.D. at 82 (noting that multipliers have ranged from 1.0 to 4.0 and concluding that a multiplier of 2.02 was appropriate).

## V.      CLASS COUNSEL'S LITIGATION EXPENSES ARE JUSTIFIED AND SHOULD BE REIMBURSED.

"Lawyers who recover a common fund for a class are entitled to reimbursement of litigation expenses that were reasonably and necessarily incurred in connection with the litigation." *Hill*, 2015 WL 127728, at *20. Here, Class Counsel have incurred a total of $22,381.69 in out-of-pocket litigation expenses. *See* Joint Decl. Re: Final Approval at ¶ 68. More particularly, over the course of this litigation, Class Counsel incurred the following costs, among others: mediation, filing and *pro hac vice* fees, experts and consultants, federal express and courier services, computer research, travel to mediation, photocopying and printing, and telephone conferencing services. *See id.* These expenses were reasonably incurred in the prosecution and settlement of this Action. Accordingly, reimbursement of these out-of-pocket litigation expenses is appropriate. *See Bezdek*, 79 F. Supp. 3d at 351–52 (finding costs associated with mediation, legal research, filing fees, consultation with experts, photocopying, and travel to hearings, depositions, and meetings reasonable and awarding $61,674.44 in incurred litigation expenses); *Hill*, 2015 WL 127728, at

*21 (finding costs for experts, creating and maintaining an electronic database for review of documents, conducting online legal and factual research, court fees, court reporters, out-of-town travel, and copying were "the types of expenses that are necessarily incurred in litigation of this type" and awarding $995,297.89 in litigation costs); *In re Compact Disc Minimum Advertised Price Antitrust Litig.,* 370 F. Supp. 2d 320, 322 (D. Me. 2005) (awarding $119,185.15 in costs "for such items as overtime, telephone, fax, postage, FedEx, photocopying, court fees, service of process, etc.").

## VI.    THE REQUESTED SERVICE AWARD IS REASONABLE.

"A named plaintiff is a necessary component of any class action, and thus, a service award may be appropriate to induce an individual to take part in the suit." *Venegas v. Global Aircraft Service, Ins.*, No. 2:14-cv-249-NT, 2017 WL 2730025, at *4 (D. Me. June 26, 2017). Service awards "serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, the public nature of a collective action filing, and any other burdens they sustain." *Lauture v. A.C. Moore Arts & Crafts, Inc.*, No. 17-cv-10219-JGD, 2017 WL 6460244, at *2 (D. Mass. June 8, 2017); *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. at 98.

Plaintiff has been engaged with this case from the outset, he has been in regular contact with counsel and aided their investigation. *See* Joint Decl. Re: Final Approval at ¶71 and Ex. D. Specifically, Plaintiff helped counsel draft the complaint and the amended complaint by providing details of his experience and relevant facts and events; he reviewed and provided documents and information from his computer and FloSports and Facebook accounts; he has communicated throughout the litigation with Class Counsel via Zoom meetings, telephone calls, and emails; and he oversaw the settlement of this Action and the terms negotiated. *See id*. But for Plaintiff's efforts,

18

and his desire and willingness to stick with this case and get relief for others, the Settlement Class here would have received nothing. An incentive award of $2,000 to Plaintiff is reasonable and fair and within the range of awards approved in other class actions. *See, e.g., Carlson v. Target Enter., Inc.*, 447 F. Supp. 3d 1, 5 (D. Mass. 2020) (approving an incentive award of $7,500 to named plaintiff); *Sparks v. Mills*, 626 F. Supp. 3d 131, 140 (D. Me. 2022) (approving service awards of $2,000 each for the two class representatives in recognition of their "essential service").

## VII.    <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiff respectfully requests that this Court grant this motion and (i) award attorneys' fees (inclusive of expenses) of $875,000.00, or one-third of the Gross Settlement Fund, to Class Counsel; and (ii) award a service award of $2,000 to Plaintiff.

Dated:  December 6, 2023

/s/      Rachel Geman
Rachel Geman (rgeman@lchb.com)
Douglas I. Cuthbertson
   (dcuthbertson@lchb.com)
LIEFF CABRASER HEIMANN &
   BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: (212) 355-9500

Michael K. Sheen (msheen@lchb.com)
Nicholas R. Hartmann
   (nhartmann@lchb.com)
Nabila Abdallah (nabdallah@lchb.com)
LIEFF CABRASER HEIMANN &
   BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000

Christopher J. Cormier
   (ccormier@burnscharest.com)
BURNS CHAREST LLP
4725 Wisconsin Avenue, NW
Washington, DC 20016
Telephone: (202) 577-3977

Hannah M. Crowe
   (hcrowe@burnscharest.com)
BURNS CHAREST LLP
900 Jackson Street, Suite 500
Dallas, TX 75202
Telephone: (469) 904-4550

Respectfully submitted,

/s/      Hank Bates
Hank Bates (hbates@cbplaw.com)
Lee Lowther (llowther@cbplaw.com)
Courtney E. Ross (cross@cbplaw.com)
CARNEY BATES & PULLIAM, PLLC
519 W. 7th Street
Little Rock, AR 72201
Telephone: (501) 312-8500

C. Andrew Dirksen (cdirksen@cerallp.com)
CERA LLP
800 Boylston Street, 16th Floor
Boston, MA 02199
Telephone: (857) 453-6555

Nicomedes Sy Herrera
   (nherrera@herrerakennedy.com)
HERRERA KENNEDY LLP
1300 Clay Street, Suite 600
Oakland, CA 94612
Telephone: (510) 422-4701

Shawn M. Kennedy
   (skennedy@herrerakennedy.com)
HERRERA KENNEDY LLP
4590 MacArthur Blvd., Suite 500
Newport Beach, CA 92660
Telephone: (949) 936-0900

*Counsel for Plaintiff and the Class*

### <u>CERTIFICATE OF SERVICE</u>

I, Hank Bates, hereby certify that this document was filed on December 6, 2023, via the ECF system, and was sent electronically on that date to the Parties' counsel of record.

By: <u>/s/ *Hank Bates*</u>
Hank Bates