IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER J. FIORENTINO,<br><br>        Plaintiff,<br>v.<br><br>FLOSPORTS, INC.,<br><br>        Defendant. | Case No. 1:22-CV-11502-AK |

## SUPPLEMENTAL DECLARATION OF CAMERON R. AZARI, ESQ. ON IMPLEMENTATION OF NOTICE PLAN AND NOTICES

I, Cameron R. Azari, Esq., hereby declare and state as follows:

1. My name is Cameron R. Azari. I have personal knowledge of the matters set forth herein, and I believe them to be true and correct.

2. I am a nationally recognized expert in the field of legal notice and have served as an expert in hundreds of federal and state cases involving class action notice plans.

3. I am a Senior Vice President of Epiq Class Action and Claims Solutions, Inc. ("Epiq") and the Director of Legal Notice for Hilsoft Notifications, a firm that specializes in designing, developing, analyzing, and implementing large-scale, un-biased, legal notification plans. Hilsoft Notifications is a business unit of Epiq.

4. This declaration provides details regarding the recent claim stimulation noticing effort and provides updated settlement administration statistics following the successful implementation of the Settlement Notice Plan ("Notice Plan" or "Notice Program") and notices (the "Notice" or "Notices") for *Fiorentino v. FloSports, Inc.*, Case No. 1:22-cv-11502 in the United States District Court for the District of Massachusetts. I previously executed my *Declaration of Cameron R. Azari, Esq. on Notice Plan and Notices* (ECF No. 60-3) ("Notice Plan Declaration") on July 26, 2023, which described the Notice Plan, detailed Hilsoft's class action notice experience, and attached Hilsoft's *curriculum vitae.* I also provided my educational and professional experience relating to class actions and my ability to render opinions on overall

adequacy of notice plans. Subsequently, I executed my *Declaration of Cameron R. Azari, Esq. on Implementation of Notice Plan and Notices* (ECF No. 71) ("Implementation Declaration") on December 6, 2023, which described the successful implementation of the Notice Plan and provided settlement administration statistics.

5. The facts in this declaration are based on my personal knowledge, as well as information provided to me by my colleagues in the ordinary course of my business at Epiq.

## NOTICE PLAN SUMMARY

6. Federal Rule of Civil Procedure, Rule 23 directs that notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," and that "the notice may be by one or more of the following: United States mail, electronic means, or other appropriate means."[1] The Notice Plan as implemented satisfied these requirements.

7. As detailed in my Implementation Declaration, the Notice Plan reached the greatest practicable number of Settlement Class Members with individual notice and supplemental digital/internet notices. The reach was further enhanced by a Settlement Website. In my experience, the reach of the Notice Plan was consistent with other court-approved notice plans, was the best notice practicable under the circumstances of this case, and satisfied the requirements of due process, including its "desire to actually inform" requirement.[2] Implementation of the Notice Plan reached an estimated 97.2% of potential Settlement Class Members.

## CAFA NOTICE

8. As detailed in my Implementation Declaration, CAFA Notice—as required by the federal Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1715, was provided to 55 federal and state officials on August 4, 2023.

---

[1] Fed. R. Civ. P. 23(c)(2)(B).
[2] *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950) ("But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected . . .").

## NOTICE PLAN DETAIL

9. As detailed in my Implementation Declaration, on August 23, 2023, the Court approved the Notice Plan and appointed Epiq as the Settlement Administrator in the *Preliminary Approval Order*. After the Court's Preliminary Approval Order was entered, Epiq began to implement the Notice Plan. During the initial email notice efforts, an unusually high percentage of "bounce-back" emails were received from one of the email service providers – Google/Gmail. As a result, Epiq took additional measures to remediate the issue, including collaborating with both Class Counsel and Counsel for FloSports, and devising a creative solution that was ultimately successful.

10. The additional measures to remediate the unusually high percentage of "bounce-back" emails received from Google for Gmail email addresses, included: (1) initiating a formal mitigation process to remove the designation as "spam" for the undeliverable Gmail addresses based on Google's action of blocking the Email Notices; (2) reattempted sending the Email Notice via a new IP pool, which were still blocked by Google; (3) opened a mitigation ticket directly with Google, which did not yield a response after multiple outreach efforts to resolve the issue; and (4) continuously sent email "seed lists," which are small groups of emails sent to test if the spam block was lifted by Google. These efforts were in addition to standard ISP outreach that was performed with eight major ISPs, including Google, ahead of Epiq launching the email notice campaign to provide the highest deliverability possible.

11. As detailed in my Implementation Declaration, on November 6, 2023, the Court approved the *Joint Motion for Extension of Deadlines* extending the deadlines for Settlement Class Members to file a claim, request exclusion, or object to the Settlement, and to allow additional notice efforts to reach Settlement Class Members with an undeliverable email address. Subsequently, Epiq created a new domain name and launched a new email campaign to send Email Notice to the addresses that were previously undeliverable, specifically Google/Gmail email addresses. This additional email notice effort resulted in a highly successful email campaign. Digital Notice was also added in conjunction with the new email campaign as another way to reach Settlement Class Members.

## NOTICE PLAN

### *Individual Notice*

12.     As detailed in my Implementation Declaration, Epiq received data for identified potential Settlement Class Members, which included email addresses and full or partial names for some potential Settlement Class Members ("Settlement Class List").  Epiq deduplicated and rolled-up the records and loaded the unique, identified potential Settlement Class Member records into its database.  These efforts resulted in 785,208 unique, identified potential Settlement Class Member records (of these records, 448 records did not have a valid email address).  As a result, 784,760 unique, identified potential Settlement Class Members were sent an Email Notice.  The Notices directed the recipients to a dedicated Settlement Website where they could access additional information and file an online Claim Form.

### *Individual Notice – Email*

13.     As detailed in my Implementation Declaration, on October 6, 2023, Epiq sent 784,760 Email Notices ("Initial Email Notice") to identified potential Settlement Class Members for whom a valid email address was available.  Subsequently, on November 15, 2023, Epiq sent 193,699 Email Notices ("Subsequent Email Notice") to those email addresses that were previously undeliverable (specifically Google/Gmail email addresses).  The Email Notices were sent using a new domain name, and the Email Notice content was updated to provide up-to-date information, including the Court-approved extended deadlines for Settlement Class Members to file a claim, request exclusion, or object to the Settlement.

14.     The following industry standard best practices were followed for the email notice efforts.  The Email Notices used an embedded html text format.  This format provided easy to read text without graphics, tables, images, attachments, and other elements that would have increased the likelihood that the message would have been blocked by Internet Service Providers (ISPs) and/or SPAM filters.  The Email Notices were sent from an IP address known to major email providers as one not used to send bulk "SPAM" or "junk" email blasts.  Each Email Notice was transmitted with a digital signature to the header and content of the Email Notice, which allowed ISPs to programmatically authenticate that the Email Notices were from authorized mail servers.

Each Email Notice was also transmitted with a unique message identifier. The Email Notices included an embedded link to the Settlement Website. By clicking the link, recipients were able to access the Long Form Notice, Settlement Agreement, and other information about the Settlement.

15. If the receiving email server could not deliver the message, a "bounce code" was returned along with the unique message identifier. For any Email Notice for which a bounce code was received indicating that the message was undeliverable for reasons such as an inactive or disabled account, the recipient's mailbox was full, technical autoreplies, etc., at least two additional attempts were made to deliver the Notice by email.

### *Notice Results*

16. As of February 15, 2024, an Email Notice was ultimately delivered to 763,339 of the 785,208 unique, identified potential Settlement Class Members. This means the individual notice efforts reached approximately 97.2% of the identified potential Settlement Class Members.

### *Claim Stimulation Reminder Notice*

17. On January 26, 2024, Epiq sent 751,877 Reminder Email Notices to Settlement Class Members who had *not* yet filed a Claim Form, and for whom a valid email address was available that was possibly deliverable based on prior email noticing efforts. The Reminder Email Notice clearly described the case and the legal rights of the potential Settlement Class Members. In addition, the Reminder Email Notices directed the recipients to the Settlement Website where they could access additional information and easily file an online Claim Form. The Reminder Email Notice is included as **Attachment 1** hereto.

### *Internet Digital Notice Campaign*

18. As detailed in my Implementation Declaration, the Notice Plan was updated to add Digital Notice advertising on the selected advertising network *Google Display Network*, which represents thousands of digital properties across all major content categories. The Digital Notices linked directly to the Settlement Website, allowing visitors easy access to relevant information and documents.

19. Details regarding the target audiences, distribution, specific ad size of the Digital

Notices and the number of delivered impressions are included in the following table.

| Network/Property | Target | Ad Size | Delivered Impressions |
|---|---|---|---|
| *Google Display Network* | List Activation - Data Match Targeting to 211,859 Undeliverable Email Addresses | 300x250, 728x90, 300x600, 970x250 | 626,462 |
| *Google Display Network* | Intent Audience: FloSports | 300x250, 728x90, 300x600, 970x250 | 6,013,870 |
| **TOTAL** | | | **6,640,332** |

20.     For the List Activation Digital Notice efforts, *Google* matched to 195,719 potential Settlement Class Member with an undeliverable email address and was able to deliver 626,462 impressions to 144,981 of these matched individuals. Combined, more than 6.6 million impressions were generated by the Digital Notices, which ran from November 15, 2023, through November 28, 2023.[3] Clicking on the Digital Notices linked the readers to the Settlement Website, where the readers could easily obtain detailed information about the case.

## *Settlement Website*

21.     The Settlement Website (www.flosportsvppasettlement.com) continues to be available 24 hours per day, 7 days per week. Relevant documents are posted on the Settlement Website, including the Email Notice (English and Spanish), Long Form Notice (English and Spanish), Claim Form, Settlement Agreement, Preliminary Approval Order, and other important documents. The Settlement Website also provided the ability for Settlement Class Members to file an online Claim Form prior to the claim filing deadline. In addition, the Settlement Website includes relevant dates, answers to frequently asked questions ("FAQs"), instructions for how Settlement Class Members could opt-out (request exclusion) from or object to the Settlement, contact information for the Settlement Administrator, and how to obtain other case-related information. As of February 15, 2024, there have been 64,685 unique visitor sessions to the Settlement Website, and 156,376 web pages have been presented.

---

[3] The third-party ad management platform, ClickCease, was used to audit Digital Notice ad placements. This type of platform tracks all Digital Notice ad clicks to provide real-time ad monitoring, fraud traffic analysis, blocks clicks from fraudulent sources, and quarantines dangerous IP addresses. This helps reduce wasted, fraudulent or otherwise invalid traffic (*e.g.*, ads being seen by 'bots' or non-humans, ads not being viewable, etc.).

*Toll-Free Telephone Number and Other Contact Information*

22.  The toll-free telephone number (1-877-619-4778) established for the Settlement continues to allow Settlement Class Members to call for additional information. Callers are able to hear an introductory message and also have the option to learn more about the Settlement in the form of recorded answers to FAQs. This automated telephone system is available 24 hours per day, 7 days per week. As of February 15, 2024, there have been 430 calls to the toll-free telephone number representing 930 minutes of use.

23.  Additionally, a Claim Package (Claim Form and Long Form Notice) was mailed to all persons who request one via the toll-free telephone number or other means. As of February 15, 2024, Epiq has mailed 80 Claim Packages as a result of such requests.

24.  A postal mailing address was established and continues to be available to allow Settlement Class Members to contact the Settlement Administrator to request additional information or ask questions.

*Requests for Exclusion and Objections*

25.  The initial deadline to request exclusion from the Settlement or to object to the Settlement was November 21, 2023. In the *Joint Motion for Extension of Deadlines*, the deadline was extended to January 12, 2024. As of February 15, 2024, I am aware of no requests for exclusion. As of February 15, 2024, I am aware of no objections to the Settlement.

*Claim Submission & Distribution Options*

26.  The Notices provided a detailed summary of the relevant information about the Settlement, including the Settlement Website address and how Settlement Class Members could file a Claim Form online or by mail prior to the claim filing deadline. With any method of filing a Claim Form, Settlement Class Members could select the option to receive a digital payment or a traditional paper check.

27.  The initial deadline for Settlement Class Members to file a claim was December 22, 2023. In the *Joint Motion for Extension of Deadlines*, the deadline was extended to February 12, 2024. As of February 15, 2024, Epiq has received 18,350 Claim Forms (17,847 online and 503 paper). Since the February 12, 2024, claim filing deadline recently passed, these numbers are

not final.  As standard practice, Epiq is in the process of conducting a complete review and audit of all Claim Forms received.  There is a likelihood that after detailed review, the total number of Claim Forms received will change due to duplicate and denied Claim Forms.

*Cost of Notice Implementation and Administration*

28. As of February 15, 2024, Epiq has invoiced $155,828.51, the cost to implement the Notice Plan and handle the settlement administration to date.  The estimated additional cost that will be incurred following the Final Approval Hearing to complete the settlement administration is approximately $29,171.  All costs are subject to the Service Contract under which Epiq is retained as the Settlement Administrator, and the terms and conditions of that agreement.

29. The remaining work to be completed is a significant piece of Epiq's estimate, including:  1) additional claims processing, analysis, and auditing; 2) communicating with claimants with defective claims, including providing defective noticing via email, and handling defect claim responses; 3) calculating distribution payments to Settlement Class Members; 4) distributing settlement funds to Settlement Class Members (digital payments or physical checks and postage); 5) handling undeliverable payments; 6) re-issuing payments; 7) communication with Settlement Class Members, including maintaining the Settlement Website and toll-free telephone number throughout the remaining duration of the settlement administration; 8) Qualified Settlement Fund ("QSF") management, tax reporting, and sales tax; and 9) associated project management and related billable hours to handle the distribution and related settlement administration responsibilities.

## **CONCLUSION**

30. In class action notice planning, execution, and analysis, we are guided by due process considerations under the United States Constitution, by federal and local rules and statutes, and further by case law pertaining to notice.  This framework directs that the notice plan be optimized to reach the greatest practicable number of potential class members and, in a settlement class action notice situation such as this, that the notice or notice plan itself not limit knowledge of the availability of benefits—nor the ability to exercise other options—to settlement class members in any way.  All of these requirements were met in this case.

31.     The Notice Plan included an extensive individual notice effort to the identified Settlement Class Members, and supplemental digital/internet notices. With the email address updating protocols that were used, the Notice Plan individual notice efforts reached approximately 97.2% of the identified Settlement Class Members. The reach was further enhanced by a Settlement Website, Digital Notice campaign, and a Reminder Email Notice.

32.     In 2010, the Federal Judicial Center ("FJC") issued a *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide,* which is relied upon for federal cases, and is illustrative for state court courts. This Guide states that, "the lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the class. It is reasonable to reach between 70–95%."[4] Here, we have developed and implemented a Notice Plan that readily achieved a reach beyond the high end of that standard.

33.     The Notice Plan followed the guidance for satisfying due process obligations that a notice expert gleans from the United States Supreme Court's seminal decisions, which emphasize the need: (a) to endeavor to actually inform the Settlement Class, and (b) to ensure that notice is reasonably calculated to do so:

    a)  "[W]hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it," *Mullane v. Central Hanover Trust*, 339 U.S. 306, 315 (1950); and

    b)  "[N]otice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections,'" *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) (quoting *Mullane*, 339 U.S. at 314).

34.     The Notice Plan provided the best notice practicable under the circumstances, conformed to all aspects of Federal Rule of Civil Procedure, Rule 23 regarding notice, comported with the guidance for effective notice articulated in the Manual for Complex Litigation, Fourth

---

[4] FED. JUDICIAL CTR, JUDGES' CLASS ACTION NOTICE AND CLAIMS PROCESS CHECKLIST AND PLAIN LANGUAGE GUIDE 3 (2010), available at https://www.fjc.gov/content/judges-class-action-notice-and-claims-process-checklist-and-plain-language-guide-0.

and applicable FJC materials, and satisfied the requirements of due process, including its "desire to actually inform" requirement.

    I declare under penalty of perjury that the foregoing is true and correct. Executed February 15, 2024.

                                                    _____
                                                    Cameron R. Azari, Esq.

# Attachment 1

**From:**  FloSports VPPA Settlement Administrator

**Sent:**

**Subject:**  Legal Notice of Class Action Settlement

---

United States District Court for the District of Massachusetts

**This is a reminder that the deadline to file a Claim and potentially receive payment under the FloSports Class Action Settlement is February 12, 2024.**

To receive a payment, you can file a claim online here by February 12, 2024.

*A court authorized this Notice. You are not being sued. This is not a solicitation from a lawyer.*

Our records indicate you may be a Settlement Class Member. Settlement Class Members are all individuals residing in the United States who, from September 13, 2020, to and through August 23, 2023: (1) is or was a Facebook user; (2) subscribed or otherwise signed up for access to Defendant's services; and (3) requested or obtained any prerecorded (including on-demand replay) videos available on any FloSports website.

A settlement has been reached in a class action lawsuit claiming that Defendant, FloSports Inc., disclosed its subscribers' personally identifiable information to Facebook, without its subscribers' consent, in violation of the Video Privacy Protection Act (the "VPPA"). Defendant denies that it violated any law but has agreed to the settlement to avoid the uncertainties and expenses associated with continuing the case.

**How Do I Receive a Payment?** You can file a claim online here. You must submit your Claim Form **by February 12, 2024**. You can choose to receive an electronic payment or a check.

**What Can I Receive?** If approved by the Court, Defendants will create a Settlement Fund of **$2,625,000** for the benefit of the Settlement Class. The Settlement Fund will be distributed to Settlement Class Members who file a timely and complete claim on a pro rata basis (meaning equal share), after subtracting any Court-approved attorneys' fees and expenses, Service Award for the Class Representative, and costs of settlement administration (including any associated taxes).

The Settlement also requires Defendant to suspend operation of the Facebook Tracking Pixel on any pages on its website that both include video content and have a URL that identifies the video content viewed, unless and until the VPPA were to be: (a) amended to expressly permit (and not prohibit) the Released Claims, (b) repealed, or (c) invalidated by a judicial decision on the use of website pixel technology by the United States Supreme Court or the First Circuit Court of Appeals, or until Defendant obtains VPPA-compliant consent for the disclosure of the video content viewed.

**When Will the Court Review the Proposed Settlement?** The Court will hold the Final Approval Hearing at 11:00 a.m. on March 1, 2024, in Courtroom 8 at the John Joseph Moakley U.S. Courthouse, 1 Courthouse Way, Boston, MA 02210. The Court will decide whether to approve: (1) the Settlement as fair, reasonable, adequate, and in the best interests of the Settlement Class; (2) Class Counsel's request for attorneys' fees and expenses; and (3) a Service Award to the Class Representative.

**How Do I Get Additional Information?** For more information, including the Claim Form, detailed Notice, and Settlement Agreement, go here, call the Settlement Administrator at 1-877-619-4778, write to FloSports VPPA Settlement Administrator, P.O. Box 2138, Portland, OR 97208-2138, or contact Class Counsel at 1-800-541-7358 or 1-888-551-9944.

AJ733 v.01

Copyright © 2024 FloSports VPPA Settlement Administrator
Our address is PO Box 2138, Portland, OR 9208-2138

If you do not wish to receive future email, click here.
(You can also send your request to Customer Care at the street address above.)